## MANSON v. HARRIS

No. 3120.  Decided January 30, 1918.  (170 Pac. 970.) ·

1. BILLS AND NOTES—WANT OF CONSIDERATION—SUFFICIENCY OF EVI-
DENCE. Evidence in action on a note given by city contractor to
city engineer *held* to support verdict for defendant, on the theory
of the note being without consideration, and exacted under threat.
(Page 400.)

2. BILLS AND NOTES—PURCHASER AFTER MATURITY—DEFENSES. De-
fense of note being without consideration and part of a transaction
against public policy is available against purchaser after maturity.
(Page 400.)

Appeal from District Court of Carbon County, Seventh District; *Hon. George Christensen,* Judge.

Action by J. H. Manson against C. S. Harris.

Judgment for defendant. Plaintiff appeals.

AFFIRMED.

*Samuel A. King, M. P. Braffett* and *L. A. McGee* for appellant.

*C. S. Price* for respondent.

McCARTY, J.

Plaintiff brought this action in the district court of Carbon county to recover the sum of $400 on a promissory note executed by defendant to one R. J. Turner. The cause was tried to a jury who returned a verdict in favor of defendant, ''No cause of action.'' To reverse the judgment entered on the verdict, plaintiff prosecutes this appeal.

Defendant in his answer admitted the execution of the note, but alleged failure of consideration therefor, and also alleged that the note was extorted from him by the said R. J. Turner. The record shows that soon after Turner received the note, and before it matured, he assigned and delivered it to the Smoot-Nixon Lumber Company, of Price, Utah. After the note matured the Smoot-Nixon Lumber Company reassigned and delivered it to Turner. About four months after the note matured Turner assigned and delivered it to Manson, the plaintiff herein. The facts and circumstances relating to the transactions leading up to and that ultimately culminated in the execution of the note by defendant Turner were, in substance, according to the evidence introduced by defendant, about as follows: (a) In 1914 the city of Price, a municipal corporation, let a contract to P. O. Silvagni and C. S. Harris, the defendant, for the construction of certain cement walks within its corporate limits or boundaries. (b) That R. J. Turner, the payee of the note in question, a civil engineer, was employed by the city to represent the municipality in the work as it progressed. The specifications upon which the contract was based were, in part, as follows:

'' (1) The class of work required in each block and portion of block will be determined by the engineer. (2) That warrants will be issued to the contractor as the work advances and to the amount of ten per cent. of the amount of work done, based on the estimates received from the engineer.''

The contract, among other things, provided that:

"The performance of this work shall be under the direction and supervision of the engineer, by whose measurements and calculations the amount of work performed shall be determined, and whose calculations shall be final, and he shall have full power to condemn and reject any and all work which in his opinion is unsatisfactory, or which does not conform to the spirit of this agreement; all such imperfect or insufficient work shall be remedied by the contractors at their sole cost and expense, and to the satisfaction of the engineer."

Silvagni and Harris completed the work specified in their contract with the city about the last of August, 1914. No complaint was made against the work by the engineer or by any other city official. Up to this point there is no controversy in regard to the facts.

Harris, the defendant, testified that about July 4, 1914, Turner, the engineer, stated to him that he (Turner) "had helped me out in setting the grades and supervising the job, and that he wanted $4,000, 10 per cent. of the job for his percentage. I told him he could not get it. * * * He was not a partner in the work, and I owed him nothing and had not hired him to do any work * * * In October, Silvagni, Gunderson (mayor of Price City), Turner, and myself, were present, and they said they wanted a division of the money made on the sidewalks. Turner said, 'We have got to have a settlement on it before it goes any further,' and I told him I could not see where he was entitled to anything." He also testified that the creditors of Silvagni and Harris were demanding their money for material furnished and used on the work, and were threatening to bring suit unless payment of the accounts were promptly made; that on November 24th, he and Silvagni went to see Turner at the latter's office; that Gunderson was there, and that Turner said to them that "we would have to divide the proceeds of the sidewalks before he would pass on the warrants." He further testified that in pursuance of Turner's demand, and in order to effect a settlement, he "gave Turner a note for $400 (the note in question), and Silvagni gave Gunderson a note for $350, and

assigned $1,100 in accounts to Turner.   On cross-examination he testified:

"I had not had any business relations with Turner outside of this contract.   There was no accounts between us except an account for $9.00 that he owed me for work."

Silvagni testified for the defense, and his evidence is substantially the same as that given by the defendant.   On cross-examination he testified in part as follows:

"Q. You signed a note to Lars Gunderson when you thought you were making it payable to Carl Gunderson (mayor), is that right?   A. Yes, I believed I signed for Carl.   *   *   *   I signed the note without reading it.   I trusted Carl Gunderson. *   *   *   Q. Before you got your money you gave up $350, or $359, whatever the sum on the promissory note is, and you were present with Mr. Harris when he gave up $400 and you gave up eleven hundred and some odd dollars in perfectly good collectable accounts?   A. Yes, sir."

The record shows that before the notes referred to were executed the accounts of Silvagni and Harris, for work performed under the contract, had been approved by the city. They testified, however, that when they signed the notes they had no notice, and were not advised of the action of the city in that regard.   In rebuttal, plaintiff called Turner, who testified as follows:

"I am R. J. Turner, who was named as payee of the note in controversy.   I heard the testimony of Mr. Silvagni and Mr. Harris to the effect that the execution of the note was induced by extortion or threats on my part.   That testimony is not true.   It is absolutely false.   The consideration of that note was a settlement of accounts between Harris and myself. The note was executed in my office and on the date it bears. Only Harris and myself were present at that time."

This is the only evidence offered by plaintiff in rebuttal respecting the circumstances under which the note sued on was executed.

Counsel for appellant vigorously contend that "the verdict is contrary to and not supported by the evidence."   We do not agree with counsel.   Turner's testimony that the consid-

eration for the note ''was a settlement of accounts between'' himself and Harris is not necessary in conflict with the evidence of Silvagni and Harris on that point.

He did not, directly or inferentially, dispute the testimony of Harris, wherein he says that he (Harris) ''had not had any business relations with Turner'' other than that connected with, or growing out of, the contract mentioned. Turner did not intimate what the nature of the ''accounts'' between himself and Harris were. Harris and Silvagni, however, testified specifically as to the character of the transactions, and their evidence is not denied. To permit a recovery on the note in question, under the undisputed evidence as disclosed by the record, would be a reflection—in fact, it would be a stigma—on the judiciary of the state. In fact, such matters and transactions might well be handled and dealt with under the Penal rather than under the Civil Code.

The record shows that Manson came by the note honestly, and was in no way connected with the transactions referred to, but, having acquired it after maturity, he took it subject to its alleged infirmities of want of consideration, and that the transactions of which the execution of the note formed a part were against public policy.

The judgment is affirmed. Costs to respondent.

FRICK, C. J., and CORFMAN, THURMAN, and GIDEON, JJ., concur.