## MATHER VS. HUTCHINSON.

*Tax deed held void for fraud, in ejectment by the grantee.—Pleading and proofs in ejectment.—When judgment will not be reversed for errors.*

1. The time for redemption of land from a tax sale having expired on Saturday, the clerk of supervisors promised the owner's agent on Sunday following that he would not open his office the next day until the regular hour (8 A. M.), and would then give him a fair opportunity to redeem ; but, by collusion with the agent of the holder of the tax certificate, he opened the office at six o'clock Monday morning, and executed the tax deed and had it put upon record. *Held,* that on these facts the tax deed might not only be annulled in equity, but treated as void, for fraud, in ejectment.

2. Whether a tax deed can be legally executed out of business hours, not determined.

3. Where the complaint in ejectment is in the ordinary form, and does not disclose the origin of plaintiff's title, defendant, under a general denial, may prove any facts which will defeat the title set up by plaintiff.

4. When the facts as to which there is no conflict of testimony show the verdict to be clearly right, judgment thereupon will not be reversed for errors in the ruling of the court.

APPEAL from the Circuit Court for *La Fayette* County.

Ejectment, commenced in 1867, for an undivided half of two forty-acre tracts. Complaint in the ordinary form. Answer: 1. A general denial. 2. Possession and occupancy for ten years under claim of title, exclusive of any other right, founded upon a written instrument. 3. That (as defendant is informed and believes) plaintiff claims title to the premises under a certain pretended or so-called tax deed, or tax deeds, purporting to be issued by the clerk of the board of supervisors of La Fayette county; that said tax deed or tax deeds was or were recorded more than three years next before the commencement of this action, and that, from the date of such recording, defendant or those under whom he claims title, have been in the actual and continual occupation and possession of the premises and every part thereof; and that the action is therefore barred.

At the trial, plaintiff put in evidence, against objection, a tax deed executed to him September 16, 1861, upon a sale made September 14, 1858. The defendant proved that the two tracts in question were patented to one Comstock, and one Merle, in 1839; that, in 1867, he acquired by deed all the title and interest of the heirs of Comstock; and that, at the commencement of the action, he occupied, also, under a license from the agent of Merle. He also introduced in evidence a power of attorney from Merle to one William C. Bostwick, dated August 29, 1859, empowering the latter to look after and sell the lands of said Merle in this state, including an undivided half of the tracts in question. William T. Henry, as a witness for defendant, then testified as follows: "In September, 1861, I suppose I was acting as

sub-agent for the heirs of Comstock; I acted in the matter at the request of William C. Bostwick and of W. Weigley, of Galena;* I went to Shullsburg, then the county seat of La Fayette county, on Sunday, September 15, 1861, to redeem from the tax sale of September 14, 1858, the Merle and Comstock lands described in the plaintiff's tax deed. On reaching Shullsburg, at eight or nine o'clock Sunday evening, I went to the residence of John Collins, clerk of the board of supervisors of that county, and told him I came for the purpose of redeeming the Comstock lands; he said it made no difference to him; that the tax deed was made out, ready to sign in the morning. I asked him when he would open his office in the morning; he said between eight and nine o'clock. I asked if it would be in time if I was at the office at eight. He replied that he would not open his office until eight o'clock in the morning, and I should have a fair chance to redeem the land. I went to his office the next morning a few minutes after seven o'clock. There was no one at the building but the clerk of the circuit court; the offices of the register of deeds and the clerk of the board of supervisors were both locked up. I remained at the door of the latter office. A few moments before eight o'clock Mr. Collins came to the office; he unlocked the office door, and went in, and I followed. I told him I wanted to redeem the Comstock lands, a list of which I had; they are the same lands described in the tax deed. He replied that it was too late; that the lands were deeded. I told him I had a right to redeem until the deed was recorded; he said the deed was recorded. Soon after, the register of deeds came to his office. I followed him into his office, and found the tax deed in question recorded. The record bore date 6 o'clock A. M. I then returned to

---

* There is nothing to show what relation Mr. Weigley bore to the owners, but it would seem that he represented the Comstock heirs.—[Rep.

Collins's office, and tendered him, in American gold, $95, in redemption of the lands. The tracts in question were two of the tracts that I tendered the money to redeem. Collins refused to take the money, or to figure up, or tell me how much it would take; and I tendered him five dollars more than it would come to as I figured it; and, to keep the tender good, I deposited the money with the county treasurer of Lafayette county, with directions to deliver it to Collins whenever he would take it, and informed Collins of such deposit. I acted under instructions from Weigley. I had gone, on the 13th of that month, to Shullsburg, and redeemed for Bostwick the Merle interest in the lands, and went this time to redeem for Weigley. * * In May, 1862, I withdrew the $95 which I had deposited with the county treasurer, and forwarded it to Mr. Weigley, at Galena." This evidence was received against plaintiff's objection. One Blessing, as a witness for defendant, testified: "In September, 1861, I lived in Shullsburg, and did business at the court-house. I remember that W. T. Henry was there, and remained over Sunday. He was indignant that the clerk had used him as he had. I afterward saw L. P. Higby and John Collins laughing together that they had headed off Henry."

The general tendency of the evidence on that point was to show that the premises were vacant during the three years immediately succeeding the record of the tax deed. The court gave the jury the following instructions, among others: "2. If the plaintiff or his agent fraudulently acquired the tax deed that he relies upon, by fraudulently preventing the owner of the land from exercising his right to redemption, he acquired no such title as will prevail against the original owner or his grantee. Fraud is a question for the jury. 3. One whose land is sold for the non-payment of taxes may redeem it at any time within three years. In computing the time in which an act may be done, the first day is to be

excluded, and the last day included, unless it falls on Sunday, in which case it must be excluded, and then the following day is the last day. 4. A *bona fide* tender of sufficient redemption money, and refusal upon the part of the officer required by law to receive it, if made within the time prescribed by law for redemption, will protect the owner the same as though he had received a certificate of redemption."

Verdict for the defendant; new trial denied; and from a judgment on the verdict, the plaintiff appealed.

*P. A. Orton, Jr.* (with *Spooner, Lamb & Spooner,* of counsel), for appellant:

The general rule for the computation of statute time is, that when the last day falls on Sunday, the act required must be done on the Saturday preceding; and accordingly it is held that when the last day for redeeming from an execution sale happens on Sunday, the redemption must be made the day before. *People v. Luther,* 1 Wend. 42; 7 Cow. 147. Our statutory provision (Laws of 1856, ch. 120, sec. 310; R. S. ch. 140, sec. 34) applies only to the acts and proceedings to which those chapters relate. The instruction on this subject tended to mislead the jury, and may have determined their verdict. 2. Plaintiff had a right to his tax deed at any moment after midnight of Sunday the 15th, when he could get the officer to execute it. The original owner had a right to redeem at any moment after the same midnight when he could get the officer to receive the money. The law itself put the parties' upon a race with each other. Probably neither party could require the officer to do any thing out of business hours. But the officer could execute the deed or receive the money before the regular hour of opening the office if he chose to do so. 7 Hill, 177. At six o'clock, Monday morning, there had been no redemption nor any thing equivalent; the officer, therefore, had *authority* to execute the deed at that hour; and the deed was not void. If, when Mr.

Henry found at seven o'clock that the tax deed was recorded, he had gone away without making any offer to redeem, no one would say that his clients were restored to their land as though redemption had been made ; and this is a test, for if the tax deed was void when made, no redemption or offer of redemption was necessary. But what happened after the execution of the deed could not relate back so as to make it invalid. The thing which happened after the deed was executed might not have happened ; and the deed was valid or was void at the moment of its execution. We do not say that the conduct of the clerk, as it appears by the testimony of Mr. Henry, was not reprehensible. There was no issue in the case which led the plaintiff to anticipate any question of that kind, and it would be wrong to pre-judge the rights of the parties until the testimony on *both sides* of that question shall be heard. Whether the plaintiff has gained an advantage in law, which *equity* will not allow him to retain, we need not inquire. It will be time to meet that question when it is properly presented, and we forbear to discuss it. What we affirm on that point is this : that if the original owner *was* fraudulently prevented from redeeming his land before the tax deed was recorded, the remedy is to allow him to *redeem it now*, and not to give him the land without his making any redemption ; in other words, that the defendant in this case, in order to avail himself of that defense, must set it up in his answer, and ask, as affirma-tive relief, that the redemption attempted by Mr. Henry should be allowed to be completed as to the tracts in controversy, and that the tax deed, as to them, should be set aside or declared void. The case is like that of *Bross v. Wiley* (6 Wis. 485), where the complainant was entitled to pre-emption of a tract of land, and when he made application to prove his settlement, and pay for the land, the officer refused to hear his proofs or receive his money ; the defendants in the action having pre-

viously presented false affidavits showing their pre-emption right to the land, and received a patent for it. The prayer was, that the title might be decreed to be in the complainant, upon his bringing into court *such sum of money* as the court should think agreeable to equity. He who asks equity must do equity; and the complainant in that case, although grossly defrauded, could never have obtained the legal title, except upon the payment of the entry price of the land. If the former owners, in this case, are entitled to have the lands upon making the redemption which, it is said, they were fraudulently prevented from making, it does not follow that they are entitled to have them without making *redemption at all.* To hold the tax deed void in a court of law is to allow the former owners to keep the lands without having redeemed them from the tax sale. But the power of equity to give relief on terms equitable to both the parties is not the only reason why such facts as are relied upon in this case for avoiding the deed are only of equitable cognizance. The grounds on which relief is asked in equity must be stated in a pleading, so that the issue may be fairly presented, and all necessary parties be brought in. In ejectment there is, as in this case, a mere assertion of title on one side, and a denial of it on the other; and a party may well be unprepared to meet an impeachment of his title by proof of extrinsic and collateral facts tending to show bad faith in some remote grantor, or in some person not really connected with the title. If the question may be raised in the present state of the pleadings between *Mr. Mather* and the defendant, it might be raised between the defendant and a remote grantee of *Mr. Mather*, who had never suspected the existence of any such facts, and would be wholly unprepared to contradict or explain them. Would such a grantee be affected by proof of such facts if he had no notice of them at the time of receiving his deed? And if not, is it not manifest that

the deed was not void, but only liable to be avoided? There is another reason for the rule. The law has wisely prescribed a time beyond which actions for relief on the ground of fraud are barred. If the collateral facts alleged to have existed in this case may be proven in an ejectment suit with a view of showing that the deed is void, then they might be so proven at any time before the title had become settled beyond controversy by a ten or a twenty years' possession, and after the means of contradicting or explaining them have been lost by the lapse of time.

*E. J. Hill* and *M. M. Cothren*, for respondent, as to the admissibility of the defense of fraud under the pleadings, cited *Rogers v. Brent*, 5 Gilm. 573; *Gardiner v. Tisdale*, 2 Wis. 143; *Gillett v. Eaton*, 6 id. 30; 13 id. 321; 17 id. 635. To the point that if redemption was prevented by the act of the officer the tax deed was void, they cited *Van Benthuysen v. Sawyer*, 36 N. Y. 150; 10 Pet. 22, 23. They also contended that the holder of the tax certificate could not claim a deed, nor could one be executed to him, until business hours on Monday, 16th of September, and, therefore, there was no deed in existence entitled to be recorded at the moment when the offer of redemption was made by Henry; and that the lands were in fact redeemed by virtue of that offer.

PAINE, J. The counsel for the appellant would hardly contend, that, if the facts testified to on the part of the respondent, and not contradicted, in relation to the manner in which a redemption was prevented, were true, the respondent ought not to have relief, at least in equity, against the appellant's tax deed. No one could reasonably so contend. Those facts show a fraudulent collusion, on the part of the clerk of the board of supervisors and the appellant's agent, by which the redemption was prevented. Even if it be conceded that the time for

redemption expired on Saturday night, and that after that the field was open to a race of diligence between the tax-title holder and the original owner, still that race must be a fair one. Here the agent of the original owner was on hand to redeem. He saw the clerk of the board on Sunday ; the latter promised not to open his office the next morning until eight o'clock, and that a fair opportunity for redemption should be given. Then, in violation of that promise, he evidently sought out the agent of the holder of the certificate, and went at six o'clock on Monday morning and executed the tax deed, and got it put on record. Such conduct in an officer is exceedingly reprehensible, and it clearly constituted a fraudulent prevention of the redemption. The agent of the original owner was thrown off his guard, and lulled into a false security by this false and fraudulent promise, on which he had a right to rely.

It is not necessary to determine that a deed could not be legally executed out of the usual business hours of the office. But when it is so executed in violation of a promise, by the officer to the other party in interest, not to open his office till the usual hour, and to then allow him a fair opportunity to exercise his right of redemption, it is fraudulently done, and may be avoided for the fraud.

It was actual fraud. There can be no doubt that the officer communicated all the facts to the agent of the certificate holder. They laughed together afterward at the success of the trick.

Such a fraudulent prevention of redemption, and procurement of the execution and recording of a tax deed, must be held to avoid the deed at law as well as in equity. It is a general rule that actual fraud vitiates every thing, both at law and in equity. The remedy in equity was sometimes more complete, and therefore preferable. But wherever the fraud could be satisfactorily shown in an action at law, it was equally avail-

able.    And, under the present practice there is no substantial difference between the actions in respect to the facility of getting at the truth.

The evidence upon this subject was objected to, upon the ground that these facts were not alleged in the answer.    But the action was for the recovery of real estate. The complaint was in the ordinary form, and did not disclose the origin of the plaintiff's title.    And we have held that in such an action, under such a complaint, the defendant, under the general denial, must be allowed to prove any thing which would defeat the title offered by the plaintiff.    Any other rule would place him at a great disadvantage.    The plaintiff, not being bound to disclose the title relied on in his complaint, may, at the trial, offer any evidence of title which he pleases.    With such a rule as to the plaintiff, it would be manifestly unjust to exclude the defendant from proving that the title offered by the plaintiff was void for fraud or any other reason, because he had not specifically set forth the facts in his answer.    It would require him to foreknow and avoid, by specific allegations, a title which the plaintiff was not bound to disclose at all.    See *Lain v. Shephardson*, 23 Wis. 224.

As there was no conflict in the evidence upon this subject, and we can see that for this reason the verdict and judgment were clearly right, without regard to the correctness of the rulings upon other points, the judgment must be affirmed.

*By the Court.*—Judgment affirmed.