# JULY TERM, 1900.

## PRESENT:

HON. FRANK DOSTER, CHIEF JUSTICE.
HON. WILLIAM A. JOHNSTON, } ASSOCIATE JUSTICES.
HON. WILLIAM R. SMITH,

## T. H. McMANUS v. JACOB WALTERS AND CONRAD SELL.

**No. 11,586.** (61 Pac. 686.)

1. CONDITIONAL SALE—*Implied Contract.* In cases of conditional sales of personal property, a reservation of title in the seller until the performance of the conditions by the buyer may be implied from the conduct of the parties and the facts and circumstances of the case, and need not be made in the form of an express agreement.

2. —— *Error in Refusing Instructions.* The facts of this case, as testified to by the seller of a stock of merchandise, tended to show an intention on his part to reserve, and on the part of the buyer to allow, a reservation of title in the seller; *held,* therefore, that it was error for the court to refuse to instruct the jury on the theory of a claim by the seller of an implied reservation of title.

3. REPLEVIN—*Amendment of Petition.* A plaintiff in replevin, who, in ignorance of the real value of property sought to be recovered, alleges its value at an excessive sum, is entitled, upon motion therefor, to amend his petition in such respect, notwithstanding he failed to amend when, as before answer, he could have done so without leave, and also failed to apply for leave as early as he might have done, if the amendment, when applied for, can be made without prejudice to the rights of the defendant, and if a denial of leave to make it will increase the liability of the plaintiff to the extent of a thousand dollars, or a fifth of the value of the property in dispute.

Error from Marion district court; O. L. MOORE, judge. Opinion filed July 7, 1900. Reversed.

*W. H. Carpenter,* and *Bowman & Bucher,* for plaintiff in error.

*King & Kelley,* and *S. Burkholder,* for defendants in error.

The opinion of the court was delivered by

Doster, C. J. : This was an action of replevin of a stock of goods, brought by the plaintiff in error, T. H. McManus, against the defendants in error, Jacob Walters and Conrad Sell.  The most material claim of error is that the court, in its instructions to the jury, misstated the theory on which the plaintiff based his right to recover the property, and also refused a request for instructions which correctly stated the theory of the claim made by him, and to the establishment of which claim his evidence was directed.  The plaintiff claimed to be the owner of the goods, but admitted that he had made a conditional sale of them to the defendants, which conditions, as he claimed, had not been complied with by the defendants.  The instructions of the court attributed to the plaintiff a claim of sale of the goods with an express reservation of title until compliance should be made with certain conditions.  The plaintiff did not ask that the jury be instructed on the theory of an express reservation of title, but did ask for instructions on the theory of a reservation of title inferable from the facts and circumstances of the case.

To determine the character of the plaintiff's claim a brief statement of the evidence on his part will be necessary.  The plaintiff lived and did business at Newton, Kan.  He owned the stock of goods in question, which was at Marion, Kan., and in charge of Jacob Walters, one of the defendants, as his agent. Walters and Conrad Sell, the other defendant, de-

9—62 KAN.

sired to purchase the goods at Marion. A part of their plan was for Sell to remove a stock of goods owned by him at a neighboring town and unite it with the one at Marion. The parties met at the last-named town and agreed on terms. These terms were reduced to writing and stated in a provisional memorandum agreement, which recited in substance that an invoice of the stock of goods should be taken; that the plaintiff should· sell to the defendants for ninety per cent. of the invoice price, payable $1000 in cash, the balance in weekly payments thereafter, which payments were to be evidenced by promissory notes signed by the defendants; that upon the completion of the invoice the plaintiff should execute a bill of sale of the goods to defendants, who in turn were to pay the thousand dollars and deliver the notes.

The bill of sale and the notes were signed preparatory to delivery, and the parties met in a law office to complete the transaction. The plaintiff delivered the bill of sale and the defendant Walters handed the plaintiff $300 of the cash payment. The plaintiff objected that the amount was not what had been agreed upon. Walters said that it was all he had at that time, but that he would pay the remainder to plaintiff at his home in Newton in a very few days. The plaintiff declined to accede to this change of agreement and demanded the return of the bill of sale. Walters at first objected to returning the bill of sale, but handed it back, upon being advised by the attorney present that it should be done. The parties then separated, with the statement by Walters that his inability to pay the full amount agreed on would be temporary, and that he would presently pay it all, the plaintiff thereupon stating that he would deliver the bill of

sale and complete the transaction when the thousand dollars was paid.

The plaintiff returned to Newton and found one of his children suffering a serious injury, from the effects of which it died in about a week thereafter. During this time Walters remitted $200 more to the plaintiff and also called on him for the purpose of a conference concerning the payment of the balance and the closing up of the transaction. The plaintiff informed him that on account of the misfortune in his family he was not in a condition to attend to the business, but stated that as soon as he could do so he would go to Marion and close the matter out. Soon thereafter he did go there, but the parties were unable to agree on terms for the completion of the transaction. In one of his conversations there, Walters admitted that the goods still belonged to the plaintiff. During all this time the defendant Walters was in possession of the stock of goods and engaged in the sale of it, as he had been before he opened negotiations for its purchase.

The above summary of facts was in substance the testimony of the plaintiff. It was contradicted in many particulars by the defendants. We, however, are not concerned with the truthfulness of the statements of either party or their witnesses. The plaintiff was entitled to an instruction to the jury presenting his theory of the case, and the question therefore is, Do the facts, as testified to by the plaintiff, present a claim of implied reservation of title or a reservation of title by express agreement? We are entirely clear that they present a case of the former and not of the latter. Indeed, the counsel for the defendants in error, in their opposition to the theory of implied

reservation, array only a portion of the circumstances above detailed and one or two additional matters derived from the testimony of their own witnesses and the cross-examination of the plaintiff, which, giving to them all the weight to which, in reason, they may be entitled, in no manner controvert the theory of the plaintiff in error. They say in their printed argument:

"When the plaintiff had accepted a part payment of the cash payment, when he knew the residue was not to be paid at that time, on the promise of defendants to pay within a short time, and then surrendered possession of the stock of goods, knowing same were to be sold in the usual retail trade, and that new goods were to be put in the stock and the Sells goods were to be moved from Lehigh and placed in the same general stock, by which the identity of the goods sold would be lost, and the means of determining the particular article sold would be made well-nigh impossible, and furnished advertisements for the parties to whom he had sold, and had gone away without receiving the payment, and then advertised in his home papers that he had sold out to Walters, it would take an express agreement to reserve a title in the plaintiff under these facts."

The above is but the statement of circumstances proper to be taken into account in considering the nature of plaintiff's claim, but none of them, nor all of them together, possessed a character which would make his claim into one of express reservation of title instead of an implied one. Indeed, the contention of the defendants in error is not so much that the facts show an express reservation (if any at all) and not an implied one, as it is that the law does not countenance conditional sales by implied reservations of title. The

1, 2 Conditional sale may be implied from circumstances.

authorities cited by them are summarized in 21 A. & E. Encycl. of L. (1st ed.) 482:

"When there has been no manifestation of intention, the presumption of the law is that the contract is an actual sale, and that the transfer of title takes place at once, if the specified thing is agreed on, and is ready for immediate delivery. This is universally true where the price has been paid or the goods have been expressly sold upon credit, but where the sale is for cash, payment, it has been said, must precede the transfer of title. The better doctrine, however, appears to be that the transfer of title takes place immediately upon the conclusion of the contract, notwithstanding the fact that the transaction is for cash, the seller having a lien for the price which entitles him to retain the possession of the chattel until the price is paid. And in those jurisdictions in which, when the sale is for cash, payment is held a condition precedent, it has been universally held that the seller waives the condition when he makes complete delivery without expressly reserving title to himself."

There can be no question as to the correctness of the above statement of the law. It will be, however, observed that its application to any particular case is hinged on the fact of the delivery by the seller to the buyer of the thing sold. Counsel for defendants in error, therefore, beg the question in the case. There was no delivery of the stock of goods by the plaintiff to the defendants in error. The defendant in error Walters simply retained the possession of the goods as he had for many months before when he was holding them as the agent of the plaintiff in error, or, to state it in a way to which the defendants in error can take no possible exception, the facts of the case, as testified to by witnesses on both sides, raised nothing more than a question as to whether the possession of Walters was a continuance of his former possession

as agent, or a new possession by him as owner. It would be impossible for defendants in error to reduce the question to one of more favorable terms than as above stated, and, thus stated, the inapplicability of the law quoted in their behalf becomes apparent. On the other hand, the law is well settled that a reservation of title as one of the terms of a conditional sale may be implied from the circumstances of the transaction. In *Fishback v. G. W. VanDusen & Co.*, 33 Minn. 111, 22 N. W. 244, it was ruled:

"When payment of the purchase-money and the delivery of the goods are expressly or impliedly agreed to be simultaneous, and the payment is omitted or refused by the purchaser upon getting possession of the goods, the vendor may reclaim them, the delivery being merely conditional. To constitute a conditional delivery, it is not necessary that the vendor should declare the condition in *express terms* at the time of delivery. It is sufficient if it can be inferred from the acts of the parties and the circumstances of the case *that it was intended to be conditional.*"

In Tiedeman on Sales, section 201, it is said:

"No particular words or forms of expression are really necessary for the creation of a conditional sale. Any words which indicate an intention to annex a condition to the sale will be sufficient. Such phrases, however, as 'on condition,' 'provided,' 'if it shall so happen,' etc., are found in constant use, in the making of conditional sales, and, if employed, will usually remove any doubt as to the sale or transfer being conditional. *But whether these expressions are used or not, if the intention of the parties to make the sale dependent upon the happening of some event or the performance of some collateral obligation can be ascertained from the expressions of the parties, it will be a conditional sale, it matters not what may be the language used.*"

Authorities to the same effect could be multiplied. We doubt, indeed, whether a single one to the con-

trary can be found. The court, therefore, erred in stating the theory of the plaintiff's case and confining his right of recovery to an. express reservation of title.

The court also erred in another particular. It refused leave to plaintiff to amend his petition, under circumstances which constituted an erroneous view of judicial discretion. The plaintiff in his petition and affidavit for replevin alleged the value of the goods to be $5110. Immediately upon securing possession he took an inventory which showed them to be only of the value of $4144. The petition was filed on the 7th of February and the inventory taken a few days thereafter. The case was set for trial April 13, following. When it was called for hearing the plaintiff asked leave to amend his petition by alleging the value of the goods at what he had discovered it to be. The court denied him leave to make the amendment, but upon the trial allowed him to prove the real value of the goods. After making proof of such value the plaintiff again asked leave to amend his petition by alleging the value to correspond with the proof. This request was denied, and the court thereupon instructed the jury that if it found against the plaintiff to find the value of the goods to be the sum stated by him in his pleadings, to wit, $5110.

Unless there was such conduct on the part of the plaintiff as to disentitle him to make the amendment he asked to make, or unless the making of it would have been to the material prejudice of the defendants, the court should have allowed it to be made. The opposition to the making of the amendment was stated to us by counsel for defendants in error, and, we suppose, was likewise stated by them to the court below, to be that the plaintiff had the time intermediate the

discovery of the real value of the goods and the answer-day, a period of about one month, within which, under the authority of the statute, to amend his petition without leave, and also had from the beginning of the term of court at which the case was tried until the calling of the case for trial, a period of ten days, within which to apply to the court for leave to make the amendment, and that, when upon the calling of the case for trial he did ask for leave to make the amendment, he made no showing of reasons why it had not been applied for at an earlier date. These, it must be admitted, constituted proper objections to the making of the amendment, but in our judgment they did not constitute sufficient objections to making it. The defendants urge no reasons why the amendment would have been prejudicial to them other than to deprive them of the opportunity of holding the plaintiff to an inadvertently made allegation of value. They do not say that they desired to contest the plaintiff's claim of lesser value and were not then prepared to do it. They rely not on merit in themselves but on the laches and consequent demerit of the plaintiff.

Now, while the making of amendments is very largely in the discretion of the trial court, it should, nevertheless, allow amendments in furtherance of justice to a party, if the making of them will work no injustice to the other party; and where the effect of an amendment will be to save to a party $1000, a fifth of the value of the thing in dispute, we think it should be allowed, notwithstanding a lack of diligence in applying for leave to make it. The laches of the one party is only of concern to the opposing party in the event he has suffered some loss or been put to some disadvantage because of it. It is proper to refuse leave to amend pleadings when asked for by negli-

gent suitors, if the acts of negligence and the amendments in correction of them will be to the material disadvantage of the one who is without fault, but unless such is the case a party should not suffer so serious a punishment for his laches as the deprivation of a very large portion of the value of the thing in controversy.

Some other claims of error are made—one that the court ruled that it was necessary for the plaintiff to make a demand on the defendants for the surrender of the goods before instituting the action for their recovery.

*4. No demand before action necessary.*

This was one of the class of actions in which a demand was not a prerequisite to the institution of the suit, and the court, therefore, erred.  The other claims of error raise questions subsidiary to the one first and principally discussed herein and do not require special mention.

The judgment of the court below will be reversed, with directions for a new trial.