## MUTUAL REFINING CO. v. UNION REFINING CO.

No. 14378—Opinion Filed Jan. 18, 1927.

Dissenting Opinion, Jan. 25, 1927.

Rehearing Denied May 10, 1927.

(Syllabus)

### Appeal and Error—Reversible Error—Instructions Outside Issues.

Whether requested or not, it is the duty of the trial court to state to the jury in its general instructions the law applicable to the issues raised by the pleadings and the evidence adduced upon the trial. Failure to do so constitutes reversible error. An in-

struction which is intended to go to the law of the case, which indicates to the jury that it might find for the plaintiff on the doctrine of innocent purchaser for value without notice, whereas same was never pleaded, and there was no evidence before the jury which as a matter of law would give plaintiff the benefit of such doctrine, a verdict based thereon must be set aside.

Error from District Court, Tillman County; Frank Mathews, Judge.

Action in replevin by the Union Refining Company against the Mutual Refining Company. Judgment for plaintiff, and defendant brings error. Reversed.

Jay M. Lee, P. Mounts, Bell & Fellows, J. T. Johnson, W. H. Hussey, and Herman S. Davis, for plaintiff in error.

Wilson & Roe, Hiles Hamilton, and Snyder. Owen & Lybrand, for defendant in error.

BRANSON, V. C. J. Error is presented herein from the district court of Tillman county. The Union Refining Company, a corporation, of Buffalo, N. Y., sued the Mutual Refining Company, a corporation, of Kansas City, Mo. Its action was in replevin, and it sought the recovery of 940 joints of four-inch pipe. The petition goes no further than to allege the corporate entity of the plaintiff, and that the defendant wrongfully detained the pipe in question, and the value thereof; that the plaintiff is the owner of said property and entitled to immediate possession thereof, and further pleading that demand had been made upon the defendant, and refused. The Mutual Refining Company's answer denied each and all the allegations of the plaintiff's petition, and further affirmatively pleaded that the property claimed by the plaintiff was the property of the defendant, and that the plaintiff had no right, title, or interest in said property in any way. To this answer there was no reply.

The defendant, having asserted its ownership of the pipe, as against the assertion of ownership by the plaintiff, the sole question to try was the one of ownership.

Both the plaintiff and the defendant being refining companies, that confusion may not arise, they are referred to herein as the Buffalo Company and the Kansas City Company; the Buffalo Company being the plaintiff, and the Kansas City Company being the defendant.

The case is now before this court on rehearing. The original opinion filed herein affirmed the judgment of the trial court finding that the Buffalo Company was the owner of the pipe. In that opinion it is said:

"It appears from the record of this case that in 1919 plaintiff (the Buffalo Company —ours), was erecting a refinery at Grandfield, one James D. McMahon being in charge of the construction work and the purchase of materials therefor."

This is a succinct statement of what the president of the Buffalo Company testified in the trial of this case as to the relation of the said McMahon to the Buffalo Company. It further appeared, however, in the record, that the technical relation of McMahon with the Buffalo Company was embodied in a written contract, which the Buffalo company neither produced for examination nor for evidence.

So, we are driven at the outset to the conclusion that the said McMahon was in charge of the construction work, and was in charge of purchasing materials for the Buffalo Company in the construction of its Refinery at the said town of Grandfield.

The said McMahon had been so in charge of the operations of the Buffalo Company for many months prior to December, 1919. This brings us to some of the details material to the instant case. In December, 1919, the said James D. McMahon received the possession of the pipe in question from the defendant, the Kansas City Company, and under the evidence there is nothing to show otherwise than that he received possession in this manner; that the Kansas City Company was the owner of the pipe; that it ordered the pipe shipped to Grandfield and directed its representative at Grandfield to deliver, on December 18, 1919, the said pipe to the said McMahon, under a parol agreement, as stated in the original opinion in this case, as follows:

"The oral contract between McMahon and the defendant (the Kansas City Company —ours) provided that after the construction of the pipe line (which was to be constructed by the said McMahon to some producing wells, so as to run oil from such wells to the tank cars at Grandfield, the said oil to be shipped to the Kansas City Company), and after sufficient oil had been delivered through such pipe line to the defendant, to repay the defendant the purchase price thereof, that McMahon should have the right to purchase said pipe, the price to him not being fixed or determined."

This statement in the original opinion filed herein is all that the evidence even tends to show as to the manner in which McMahon secured the possession of pipe belonging to the defendant. It must, there-

fore, be noted that on December 18, 1919—this being the very day on which McMahon received from the Kansas City Company the pipe—the defendant, Kansas City Company, owned and was in possession of the same, and its delivery to McMahon was for definite and specific purposes. to wit, to build a pipeline for the defendant through which oil should be run into tank cars at Grandfield, which oil, by means of said tank cars and railroad transportation, was to be shipped to the order of the Kansas City Company, and that when, at the rate chargeable therefor, sufficient oil had been run to compensate the Kansas City Company for the purchase price of the pipe, that McMahon should then have a right to purchase the pipe, the price at which the Kansas City Company would then sell the pipe not even being agreed upon.

The character of the pleadings must be called to the attention of the reader at this juncture, for it is insisted by the plaintiff that McMahon had possession of the pipe under a conditional sale contract, whereas, under the evidence in this case, which is undisputed and not questioned, as a matter of law McMahon had the possession of this pipe as a bailee, with a mere option to purchase, the terms not being agreed upon by the parties.

Immediately upon said pipe being delivered to the said McMahon on the said 18th day of December, he stored the pipe on the ground on which he was erecting for the Buffalo Company a refinery. It seems clear from the record that from the 16th day of December, 1919, until the 18th day of December, McMahon had designedly secured this pipe with a view of embezzling the same, or attempting to embezzle and convert the same, as a pretext of securing some money from his principal, the Buffalo Company, with which to buy pipe, the said McMahon intending to use the money personally which he secured from his principal. Preparatory to carrying out what was clearly his intention, on the 16th day of December the said McMahon wired the Buffalo Company to this effect:

"Wire bank Fort Worth to release money on my signature. Must have same immediately  Have 34,000 feet four-inch pipe Cars on demurrage Grandfield now  Must pay site today."

On the same date he wrote his principal, the Buffalo Company, a letter. In this letter he stated:

"I wired you today with reference to the joint account Mr. Hogan and I have at Fort Worth. This account is in the name of the Union Refining Company, and all checks must be countersigned by Mr. Hogan that issue. During my absence Mr. Hogan was suddenly called home owing to the sickness of his wife, and no doubt will be detained there for some time; however, I had agreed to pay for the refinery site at Grandfield today, and also for four boilers to be used in your pump station. * * * I also have 37,000 feet of 4" standard pipe now on cars at Grandfield, Oklahoma, which comes to twenty-seven thousand and some dollars. * * *I have given checks covering these items, and in my wire today I requested that you wire the National Bank of Commerce, Fort Worth, to allow the account there to be checked on by me, without the signature of Mr. Hogan."

It thus appears that contemporaneously with sending the telegram he advised by letter that he had given checks for the pipe, the title to which is drawn in question in this suit. The record shows that no such check was given to anyone, but that the said McMahon knew at the time that the particular pipe here in question, and to which he made reference as being on the cars at Grandfield, belonged to the defendant, Kansas City Company, intrusted to him solely for a specific purpose, on the consummation of which purpose he had a mere option to purchase the same under terms subsequently to be agreed upon.

Attention is again called to the fact that there is no reply by the Buffalo Company to the answer, although it insists in its briefs, for the purpose of defeating the plea of ownership made by the defendant, that it is an innocent purchaser for value without notice, and invokes section 8551, C. O. S. 1921, which section provides:

"Conditional sale must be recorded. Any instrument in writing, or promissory note, evidencing the conditional sale of personal property, which retains the title to the same in the vendor until the purchase price is paid in full, shall be void as against innocent purchasers, or the creditors of the vendee, unless the original instrument. or a true copy thereof, shall have been deposited in the office of the register of deeds in and for the county wherein the property shall be kept; and when so deposited, it shall be subject to the law applicable to the filing of chattel mortgages; and any conditional, verbal sale of personal property, reserving to the vendor any title in the property sold, shall be void as to creditors and innocent purchasers for value."

We are not unmindful that this statute is very potent when properly invoked, under facts which justify its invocation. It must be noted, however, that this statute itself

only purports to **protect innocent purchasers for value without notice**, and it is a rule so well recognized it needs no citation of authority to sustain it that, where any proper party to a suit relies upon his being an innocent purchaser for value without notice, in order to sustain his contention he must plead and prove that he is such an innocent purchaser for value without notice. It is an affirmative defense. Attention is again called to the status of the pleadings in the instant case, in which no reference in made that the plaintiff is an innocent purchaser for value without notice.

We quoted above from the original opinion herein, the only deduction that can be made from the evidence, as to the circumstances, terms, and conditions under which the said McMahon received the pipe from the defendant. Under those conditions, title to the pipe could never pass from the Kansas City Company to McMahon or to the Buffalo Company except by a further agreement showing consent of the Kansas City Company, unless the Kansas City Company is precluded from asserting its ownership by some rule of estoppel based upon the doctrine of innocent purchaser for value without notice, which plaintiff does not, at any stage of the proceedings, undertake to plead. We do not mean by this statement that, under the undisputed evidence in this case, had it pleaded it was an innocent purchaser for value without notice, under the statute, supra, that it could have prevailed, even should it be conceded, as the Buffalo Company contends, that McMahon held possession of the pipe under a conditional sale contract. While the Buffalo Company argues that there was nothing in the proper records of Tillman county to show such alleged conditional sale contract, we think it is immaterial and does not work to the disadvantage of the Kansas City Company, unless the pipe was purchased and found its way into the hands of the Buffalo Company as an innocent purchaser for value without notice of the true ownership.

The record shows clearly that the Buffalo Company authorized McMahon to purchase pipe. It knew not from whom. It turned the money over to McMahon for the supposed purpose of paying therefor, but the record is equally clear that McMahon paid neither the Kansas City Company nor anyone else for the pipe in question. Had it been pleaded, the rule set out in the statute, supra, might have been effective against assertion of ownership by the Kansas City Company under circumstances, for illustration: If McMahon had taken possession of the pipe under an arrangement with the Kansas City Company which as a matter of law rose to the dignity of a conditional sale contract, and John Doe had been purchasing agent for the Buffalo Company, and, with its money, had, without any notice, actual or constructive, of the ownership of the pipe by the Kansas City Company, paid McMahon therefor, then the title of the Kansas City Company, on the principle of estoppel, could not be asserted as against such purchaser, but, under the only facts deducible from the record herein, the substance of which is set out hereinabove, McMahon designedly undertook to embezzle pipe which he held, under the evidence, solely as a bailee for a specific purpose. Can it be said that McMahon, by embezzling the property which he knew belonged to the Kansas City Company, placing the same upon the premises of the Buffalo Company, never paying the money which he advised the Buffalo Company he had drawn his check for, precluded the real owner from tracing and identifying the property so embezzled, and would that preclude it from a recovery of the same?

The record shows McMahon had left the country at the time of the trial, and his whereabouts could not be disclosed. He took the money of the Buffalo Company; he was acting as the representative of that company, and evidently, if before he saw fit to leave, he was checked up, he stored the pipe on the premises of the Buffalo Company, as a mere pretense that he might falsely and fraudulently represent that the same had been purchased with the money advanced.

Much argument is made in the briefs that McMahon, as the agent and representative of the Buffalo Company, was acting against the interests of his principal, and therefore the principal was not bound, under the authorities cited. There is no case cited, however, where the facts can be held by analogy to invoke the same rule of law as must be applied to a situation such as here. The authorities nowhere lay down the rule that the agent may embezzle the money of the principal, and attempt to convert to his own use property, the title to which, at the time of such embezzlement, was in another legal entity; that the agent's principal can receive, retain, or recover in a court of law the property so embezzled, and reap the benefit of such embezzlement as against the real owner, who traces, identifies, and takes possession of his own property, unless the essential elements of estoppel are presented. No authorities sustain such a proposition,

and it is not in accord with any principle of law called to the attention of this court.

The record fails to disclose that there was any motion presented to the trial court to instruct the jury to return a verdict in favor of the defendant, on the entire record. Omitting the formal parts of the court's instructions, as to the issues, and as to the burden of proof, and as to the conduct of the jurors in their deliberations, and as being the sole judges of the facts proven and the credibility of the witnesses, the only instruction given by the trial court which was intended to go to the law of this case is as follows:

"(3) Should you find that the defendant, Mutual Oil Company, delivered the pipe in controversy to Jas. D. McMahon for storage and safekeeping only, with the understanding that the same was to remain the property of the Mutual Oil Company until the said McMahon struck oil in wells he was then drilling and was ready to use the same to lay a pipe line to run said oil through so as to deliver said oil to the defendant, Mutual Oil Company, then your verdict should be for the defendant. But should you find that the said pipe was delivered to the said McMahon upon a conditional contract or sale that the same was to become the property of the said McMahon when it was paid for by turning over to the defendant, Mutual Oil Company, sufficient oil to pay for said pipe, and should you further find that while said pipe was in the possession of said McMahon under said conditional contract, that the plaintiff in good faith purchased said pipe through the said McMahon, without any knowledge of the fact that the said McMahon had not paid the Mutual Oil Company for said pipe in controversy, and paid the fair and reasonable cash value therefor, then your verdict should be for the plaintiff. The burden of proof upon these issues rests upon the plaintiff."

It will be noted that this instruction, in effect, says that if the pipe was delivered to McMahon upon a conditional sale contract, to become the property of the said McMahon when it was paid for, and should the jury further find that while the pipe was in the possession of McMahon, the plaintiff, in good faith, purchased said pipe through the said McMahon, without any knowledge of the fact that the said McMahon had not paid the Mutual Oil Company for said pipe in controversy, and paid the fair and reasonable cash value therefor, then the verdict of the jury should be for the plaintiff. We take it as being well settled in this jurisdiction that it is the duty of the trial court, whether requested or not, to properly instruct the jury on the issues of law presented by the pleadings and supported by evidence. This instruction invokes, in behalf of the plaintiff, the doctrine of innocent purchaser for value without notice, and' authorizes the jury to apply this doctrine, when the same was not pleaded; neither was there any evidence showing that the Buffalo Company had ever paid to any one representing the Kansas City Company for the pipe in question. The record is clear that McMahon was acting as the representative of the Buffalo Company, to purchase pipe from somebody. He never purchased pipe from anyone. This instruction, and the conclusion the jury was led to believe that it might be authorized to reach, from the record and pleadings in the case, is so foreign to the pleadings and the evidence that it cannot be said to state the law applicable in the instant case. In fact, under the record and the pleadings. there was no evidence tending to support the verdict of the jury under this instruction, even had' the plaintiff pleaded by way of reply that it was an innocent purchaser for value without notice.

Under the record as it is now before this court, there was nothing, either in the pleadings or evidence adduced thereon, on which the judgment as appears in the record could properly be rendered. The motion for a new trial on behalf of the defendant should have been sustained.

The judgment is reversed, with directions to vacate and set aside the judgment herein and to grant a new trial.

MASON, HARRISON, LESTER. and CLARK, JJ., concur. HUNT and RILEY, JJ., dissent.

Note.—See 3 C. J. p. 849, §755; 4 C. J. p. 1036, §3016; p. 1166, §3186; 38 Cyc. pp. 1691, 1692; 14 R. C. L. pp. 727, 784, 786.

---

RILEY, J. (dissenting). I dissent to the view of the majority as expressed in the opinion of this court speaking through the Honorable Vice Chief Justice Branson.

The syllabus of the majority opinion reads, in part, as follows:

"An instruction which is intended to go to the law of the case, which indicates to the jury that it might find for the plaintiff on the doctrine of innocent purchaser for value without notice, whereas same was never pleaded, and there was no evidence before the jury which as a matter of law would give plaintiff the benefit of such doctrine, a verdict based thereon must be set aside."

I dissent for two reasons. First, that in my judgment the rule as stated in the syllabus requiring an "affirmative defense" or pleading of innocent purchase for value without notice as applied to this, an action in replevin, is fundamentally wrong and contrary to the settled law of this state and in conflict with numerous opinions of this court.

This is an action in replevin brought by the Union Company. There was a general denial by the Mutual Company. A general denial is all that is necessary to admit of any defense that the defendant might have. A plaintiff in a replevin action is not bound to disclose any source of title in his pleadings when (see reference hereafter) his ownership is general and not special.

In Robinson & Co. v. Stiner, 26 Okla. 272, 109 Pac. 238, the rule is adopted that:

"All that a plaintiff in replevin is required to set forth in his petition is that he is the owner of the property in controversy (describing it). or that he has a special ownership or interest therein (stating the facts in relation thereto), that he is entitled to the immediate possession of the property, and that the defendant wrongfully detains the same from him."

The early case of Broyles v. McInteer, 29 Okla. 767, 120 Pac. 283, lays down the rule of this court, that:

"Under general denial in replevin, the defendant may make any defense which will defeat plaintiff's claim or right to possession as against the defendant. and under the code great liberality is allowed such defenses." Stone v. American Nat. Bk., 34 Okla. 789, 127 Pac. 393; Jones v. Bostick, 35 Okla. 364, 129 Pac. 718.

In Francis, Sheriff, et al. v. Guaranty State Bank of Texola. 44 Okla. 446, 145 Pac. 324, this court. in paragraph 2 of the syllabus. stated the rule to be as follows:

."An answer containing a general denial, in a replevin proceeding, puts in issue the title and right of possession of the plaintiff, and under such answer the defendant may prove title or right of possession either in himself or a stranger. or make such defense as will defeat the plaintiff's claim or right to possession as against the defendant."

In the case of Thompson v. Grove, 72 Okla. 290, 180 Pac. 553, this court, speaking through Mr. Justice Kane, and with a unanimous opinion save) and except Justice McNeill, not participating, adopted the rule laid down in Broyles v. McInteer, supra, and repeated the same in paragraph 4 of the syllabus therein.

In Williams v. Gibson Bros., 60 Okla. 147, 159 Pac. 649, this court says:

"It is well settled that under a general denial in a replevin action, a defendant may interpose any defense which will defeat the plaintiff's claim." Payne v. McCormick Harv. Co., 11 Okla. 318, 66 Pac. 287; Bancroft-Whitney Co. v. Mayfield, 36 Okla. 535, 129 Pac. 702; Holtom v. Nichols & Shepard Co., 64 Okla. 184, 166 Pac. 745.

But in the case at bar the matter of an affirmative defense of innocent purchaser for value was not presented. The Union Company, as plaintiff, was the party who sought to prove its innocent purchase. It (the Union Company) alleged it was the owner of the property and was entitled to immediate possession, demand, etc. The Mutual Company denied generally. The Union Company sought to prove its ownership by showing expenditure of funds to McMahon for the pipe. The Mutual Company did not try the case below on the theory that there had been no actual payment of purchase price, nor did it present such a theory on appeal in its assignments of error.

So far as contained in their brief,-defendant makes no objection to the introduction of the evidence of plaintiff which tended to show their status of innocent purchaser. In fact, on page 46 of plaintiff in error's brief is contained this statement:

"In any replevin action, the subject of inquiry is the right of possession to the property, and, while it is the rule that any evidence is admissible which properly determines the ownership or right of possession of the property, this rule of evidence does not permit the admission of communications had between the principal and his agent in the absence of the party against whom it is offered."

Therefore, there being no objection to the introduction of evidence bearing upon the innocent purchaser phase, under the rule of this court, pleading will be considered as having been amended to conform to the facts proven without objections. This, under the concession for the sake of argument only that the status of innocent purchaser for value must be pleaded in a replevin case.

In Jones v. McQueen (Utah) 45 Pac. 202, it is said:

"As a general rule, where a party to an action relies upon fraud he must plead it. In replevin, however, the law seems to be settled, in most jurisdictions, that where the plaintiff alleges ownership generally, and right of possession, without disclosing origin of title, or stating facts showing it. the de-

fendant may traverse the allegations of the complaint, and, under the issue thus formed, may prove that the plaintiff's title was founded in fraud, and introduce any evidence which tends to show that the plaintiff had neither title in the property, nor right of possession thereof. This rule is doubtless based on the fact that in replevin the plaintiff is not bound to disclose any source of title, and therefore the defendant is not bound to anticipate the source of title under which the plaintiff may claim. Cobbey, Repl. sec. 752; Abb. Tr. Brief Pl. secs. 942, 958; Stephens v. Halstead, 58 Cal. 193; Bailey v. Swain, 45 Ohio St. 657, 16 N. E. 370; Schulenberg v. Harriman, 21 Wall. 44; Steel Works v. Bresnahan, 66 Mich. 489, 33 N. W. 834; Merrill v. Wedgwood, 25 Neb. 283, 41 N. W. 149; Swope v Paul (Ind. App.) 31 N. E. 42; Graham v. Warner's Ex'rs, 3 Dana, 146; Mather v. Hutchinson, 25 Wis. 27; Mullen v. Noonan (Minn.), 47 N. W. 164; Delaney v. Canning, 52 Wis. 266, 8 N. W. 897."

The second reason for my dissent is as to that portion of the syllabus which says: "and there was no evidence before the jury which as a **matter of law** would give plaintiff the benefit of such doctrine. * * *"

I think it will be conceded that there was evidence tending to show that McMahon received the pipe (the personal property involved) under a conditional sales contract. It is stated in the majority opinion that "as a matter of law" McMahon had possession of this pipe as a bailee with a mere option to purchase, the terms not being agreed upon by the parties." But to constitute a conditional delivery it is not necessary that the vendor should declare the condition in express terms at the time of delivery. It is sufficient if the terms can be inferred by the acts of the parties and the circumstances of the case. McManus v. Walters, 62 Kan. 121, 61 Pac. 686; Words & Phrases, vol. 2, p. 1408. If the identical thing, either in its original or an altered form, is to be returned, it is a bailment. Union Stockyards Transit Co. v. Land & Cattle Company, 59 Fed. 49. No such return was provided for herein, but it clearly appears, on condition of payment by oil runs the title was to pass to McMahon.

It is, I take it, the majority view that such fact as a matter of law would not admit or give benefit of such a doctrine. And why not?

Mr. Williams, president of the Mutual Company, testified (R. p. 70) as follows:

"Q. Did you have any arrangement with Mr. McMahon?

"A. Yes, the pipe was to be—the pipe

was unloaded at Grandfield, Okla.; part of it was on the property of the Southern Oil Corporation, and when he was ready to lay the line, this pipe was to be used in the line. We were to furnish the pipe; all of the work and everything, the labor was to be furnished by him.

"Q. You may state so as to inform us, what Mr. McMahon was to do with that pipe, or was going to do with the pipe?

"A. We needed oil for a refinery at Chanute, Kan. Mr. McMahon had some production, or was drilling wells on his lease, and wanted to sell us the oil. First he agreed he was going to lay the pipe line for his production at Grandfield, Okla., but he was unable to finance the pipe, and pay for the same. I agreed then to purchase the pipe for the laying of the line, and he was to pay for the pipe out of the oil from his lease. The pipe was never laid. The fact is a receiver in a dispute between Oklahoma and Texas came in and took his production or possession of his property." (R. p. 72)

"Q. Now, if I understand you, you had purchased this pipe and you were to furnish it to McMahon; McMahon was to furnish the labor for the laying of that pipe, and there was sufficient pipe furnished by you to lay a pipe line of some six to eight miles in length, is that correct?

"A. Six to seven miles."

E. C. Barkley, witness and employee for the Mutual Company, testified:

"Q. What was your understanding or agreement with McMahon at the time the pipe was purchased?

"A. Why we were to furnish this 4-inch pipe to go in the McMahon pipe line with the understanding that at such time as he furnished us sufficient oil in our tank cars in Grandfield from this pipe line to pay for this pipe we would then negotiate a contract with him for the sale to him of the pipe." (R. p. 92) * * *

"Q. How much was he to pay you for this pipe?

"A. We didn't have any agreement about the price of the pipe to him."

By the evidence thus far set out the defendant, Mutual Company, strongly contended for the bailee theory; however, there was evidence more strongly indicating that in fact the relation of McMahon with the said defendant, Mutual Company, was that of conditional vendee. Such evidence is as follows (Mr. Williams, president of the defendant, Mutual Company, and Mr. McMullen, prior to the trial of the case at bar, had testified by deposition taken in another case concerning the property involved in this action [R. p. 138] ):

"Q. Under what arrangement with the McMahon Construction Company was this pipe line to be delivered to it? With whom did you make the arrangement, if any?

"A. With J. D. McMahon.

"Q. You may state that arrangement.

"A. We were in need of crude here for a refinery at Chanute, Kan. Mr. McMahon came to us to sell us oil, and; if he could make a deal for us to purchase oil from him, he would lay a pipe line from Grandfield, Okla., and deliver the oil to us in tank cars at that point. We were to take the oil from the line and he was to build this line, which was delayed a considerable length of time, and then later we learned that he was unable to finance the line. We agreed to purchase the pipe for the pipe line which the McMahon Construction Company was to build. Our pipe was to be used in the line, the title of which was to remain in Mutual Oil Company.

"Q. Did this pipe or the pipe which you purchased for the Mutual Oil Company, was that in the possession of Mr. McMahon or his company?

"A. It was given to him or delivered to him for the purpose of being in a line with the understanding that the title to the pipe was to remain in the Mutual Oil Company until paid for.

"Q. Where was it delivered to him?

"A. At Grandfield, Okla., and Devol, Okla.

"Q. What interest, if any, did the Mutual Oil Company have in this pipe line?

"A. None whatever, except furnishing the pipe for the laying of the line for the purpose of getting oil for the refinery.

"Q. Was there any agreement between the Mutual Oil Company and Mr. McMahon that it should assist him in the building of the pipe line?

"A. None except furnish the pipe. * * *

"Q. Which you have stated was to be paid for in oil?

"A. Out of oil."

McMullen testified as follows:

"Q. Whenever he ran sufficient oil through the pipe line it was his absolutely, wasn't it?

"A. McMahon's, yes. That was my understanding of what agreement was at Wichita Falls.

"Q. That was what Mr. Barkley told you when you first came down here?

"A. That was my understanding from Mr. Barkley.

"Q. And he was to pay for it by oil?

"A. That was what Mr. Barkley told me; yes, sir."

I have heretofore set out the evidence of the defendant, Mutual Company, most strongly tending to show that McMahon acted as bailee in receiving the pipe, as well as the testimony of the Union Company which most strongly tends to show that McMahon was [conditional vendee of the property. These two theories were submitted to the jury, and I think properly so under instruction No. 3. The jury elected to believe and act upon a conditional vendee theory, and there being evidence to support this theory, under the long standing rule of this court, the verdict should not be disturbed on appeal.

As I view the facts, McMahon was not agent of the Union Company in transferring the pipe from the Mutual Company. I think there is some merit in the contention that McMahon was an independent contractor in building the Union Refining Company's refining plant, but, be that as it may, in acquiring possession of the pipe in controversy McMahon contracted solely with the defendant, Mutual Company, and not with the Union Company in securing this pipe; therefore, in making the contract to build the pipe line it cannot with reason be said that then McMahon represented the Union Company, but for the sake of argument, conceding that in building the Union Refining Company's plant McMahon was an agent and not an independent contractor, notice to the agent could not and should not be imputed to his, McMahon's, principal in this instance as applied to McMahon's conversion of the pipe, for the reason that here is presented an occasion of an agent acting adversely to the interest of his principal, and this presents the exception to the general rule as stated in Clark & Skyles on Agency, section 485, as follows:

"The doctrine that a principal is chargeable with notice of facts known to his agent is based, not only upon the fiction of identity, but also upon the fact that it is the duty of the agent to communicate his knowledge to his principal, and the presumption that he has performed this duty. No such presumption can arise, however, where the agent is dealing with the principal in his own interest and where he is acting in collusion to defraud his principal, or where for any other reason his interest is adverse to that of his principal, so that it is to his own interest not to communicate the knowledge to the principal. In such case the general rule that notice to an agent is notice to his principal does not apply."

Then, by reason of section 8851, Compiled Oklahoma Statutes, 1921, the conditional sales contract not being recorded, the same

was void as against an innocent purchaser for value.

In Morgan, Baldwin & Co. v. Kanola Oil & Refg. Co., 102 Okla. 26, 226 Pac. 335, this court adopted the rule in the following words:

"A principal is not chargeable with knowledge of his agent gained in the performance of acts not done on behalf of his principal, but for and on his own personal behalf, and in matters where the agent's interest is adverse to that of his principal."

I am, therefore, of the opinion that there was evidence before the jury which as a matter of law gave plaintiff the benefit of the doctrine of innocent purchaser for value without notice, and I am of the opinion that the verdict of the jury based upon such a doctrine, under the facts as related here, should be affirmed.