## WEIL & GATLING v. CADDEL & JACOBS.

No. 18776. Opinion Filed March 5, 1929.

Robinson & Oden and T. Murray Robinson, for plaintiff in error.

A. R. Garrett, W. B. Garrett, and W. T. Jeter, for defendant in error.

TEEHEE, C. Plaintiff in error, Weil & Gatling, plaintiff below, sued defendant in error, Caddel & Jacobs, defendant below, to recover on a brokerage contract whereunder plaintiff made purchases and sales of what are termed in trade parlance as cotton contracts, which were negotiated on the New Orleans Cotton Exchange.

The relationship of the parties arose by virtue of several letters and telegrams which were in due form by plaintiff pleaded. The transactions were conducted on the basis of 100 bales per cotton contract for future delivery, subject to the rules of the cotton exchange and to law. They were negotiated on margins and extended over a period of eleven days, at the end of which period, as shown by an account rendered between the parties and made a part of the petition, defendant was indebted to plaintiff in the sum of $1,006.76, constituted of $946.62 as margins due, $55 as accrued commissions, and $5.24 as taxes.

Defendant, admitting the transactions made on its behalf by plaintiff, denied liability on the grounds that as the transactions under the brokerage contract were to be conducted on a strictly cash margin, plaintiff, under the rules of the cotton ecxhange, had the right whenever it deemed itself insecure or the margins insufficient to make a demand for further margins, and, if the demand be not complied with, to close such

cotton contract and thus save loss in excess of the margin then on deposit; and that it was plaintiff's duty to so close the contract when defendant failed to meet the first margin call, at which time cotton was of sufficient price and defendant had a sufficient margin to its credit to save loss to both parties. As a further defense, defendant alleged that no agreement for an extension of credit existed between the parties; that it was the custom among traders in cotton contracts, in the absence of arrangements for credit, upon exhaustion of the margin deposit to close the contract, and that by the custom a broker was so required to do; that as the claim of plaintiff against defendant was incurred through plaintiff's failure to observe this custom, and its having carried the account for an unreasonable time after defendant failed to meet the first margin call, the account was thus carried at its own risk, and that the carrying thereof did not impose liability on defendant for plaintiff's losses thus incurred. Plaintiff denied all new matter set up in the answer.

The cause was tried to a jury, resulting in a verdict and judgment thereon for defendant, of which plaintiff complains.

The first ground of complaint goes to the question of the sufficiency of the evidence to sustain the verdict and judgment rendered thereon. In that relation plaintiff contends that defendant failed to meet the burden it assumed under its plea of a custom which required plaintiff, in the absence of an arrangement for credit in margins, to close the cotton contract upon the exhaustion of the margin deposit, in that its evidence was not of that quality requisite to establish the custom pleaded. Among the cases by plaintiff relied on in this relation is the case of Penland v. Ingle, 138 N. C. 456, 50 S. E. 850, in which the requisites of the proof to establish a custom are well defined in this language, to wit:

"While it may be considered settled at this day, according to the views of Gray, C. J., as expressed in Jones v. Hoey, 128 Mass. 585, that a custom may be established by one witness, yet the testimony of that witness must be sufficiently convincing and patent to create in the minds of the jurors a full conviction of the existence of the custom. A custom cannot be said to be an established one if it is in serious dispute and can only be determined by carefully and nicely adjusting the scales to ascertain which side preponderates. The character and description of evidence admissible for establishing the custom is the fact of a general usage and practice prevailing in the particular trade or business, and not the opinions of witnesses as to the fairness or reasonableness of it. While many early cases held that the custom could not be established by one witness, this rule has been almost universally departed from. It is nevertheless true that the custom must be proved by evidence sufficient to satisfy the jury clearly and convincingly that such a usage existed, as can fairly be presumed to have entered into the intention of the parties when they entered into the contract. The character of the proof must be clear, cogent, and convincing as to the antiquity, duration, and universality of the usage in the locality where it is claimed to exist. Robinson v. S. S. Co., 75 Hun, 431; Robinson v. Butterworth, 80 U. S. 363; 29 A. & E. Enc. (2nd. Ed.) p. 415. Where the evidence is uncertain and contradictory the custom is not established, and the court should so instruct the jury. Desha v. Holland, 12 Ala. 513; Parrott v. Thacher, 9 Pick. 426; 12 Cyc. 1101; Bissell v. Ryan, 23 Ill. 517."

In 17 C. J. 522, section 91, whereunder in support of the text numerous cases are cited, including the Penland Case, the author epitomizes the quality of the proof required in this language:

"The custom must be clearly proved; and where the evidence is uncertain and contradictory, the custom is not established. But a mere conflict in the evidence will not prevent the proof being sufficient."

Defendant's evidence upon the point given by several witnesses clearly established that it was the custom among traders on the cotton exchange to close the particular contract account where no arrangements had been made to carry the account in the event of exhaustion of the original cash margin deposit. Plaintiff's evidence only went to the rule giving the right of the broker in such event to close the contract, and that plaintiff proceeded on the theory that, as it believed the defendant to be a responsible cotton firm, it was assumed that defendant would make good the accumulated indebtedness incurred in the carrying of the account. This assumption is strongly suggestive of an acknowledgement of the custom by defendant relied on.

Plaintiff, however, further contends hereunder that "the alleged custom, being unreasonable and indefinite, was inadmissible to limit or define the contract between the parties." In that relation several adjudications are relied on, the governing principles being summed up in Macy v. Whaling Ins. Co., 50 Mass. (9 Metcalf) 354, to wit:

"The subject is not without its difficulties: and this is true of most subjects connected with the usage of trade, till the usage be-

comes so well established as to form, with all persons thus engaged, a part of the admitted law of the trade. Usages become laws by their frequent repetition, their reasonableness, their adaption to promote the interests of the parties engaged in the business to which they are applied, and by their common adoption in the community, among those interested. They are, indeed the results of the sound common sense of practical minds engaged in the same business; each party, whether buyer or seller, giver or receiver, having his own, as well as the common advantage in view. But when a question of usage is brought before a court, two inquiries are necessary; the first, as to its nature and extent, and the second as to its reasonableness. Because a usage, to be binding, must be known and general among those engaged in the business, and received as matter of course. And, to be enforced by law, it must be reasonable in its provisions. For though usages apparently unreasonable may have been so long continued as to have acquired the force of law, yet the unreasonableness, now apparent, may have grown out of changes occurring after the usage was established. But however that may be, when the question is first presented, as to giving legal effect to a usage proved to exist, where its binding force, or proof of its admissibility, is denied by one of the parties to the suit, the court will not enforce it, or give it the sanction of law, unless it be reasonable and convenient, and adapted not only to increase facilities in trade, but to the promoting of just dealings in the intercourse between parties."

We think the custom established by defendant's evidence also meets that test, for it is to be observed that if the same had been applied to the contract sued on no such loss would have attended the transactions between the parties here litigant. It is thus possessed of those qualities both reasonable and convenient, adaptable to the facility of the trade affected, and promotive of just dealings between parties engaged therein. Defendant's evidence, therefore, being sufficient to establish the custom relied on, and there being no showing of credit arrangements between the parties, it follows that this contention of plaintiff, under a familiar rule, cannot be sustained. Niagara Fire Ins. Co. v. Flowers, 127 Okla. 137, 259 Pac. 840; Carter v. Binder, 128 Okla. 45, 261 Pac. 139.

Plaintiff next contends that "error was committed in that the case was submitted to the jury under improper instructions," that is to say, the jury were instructed upon an issue not raised by the pleadings or the evidence to the prejudice of plaintiff's rights. It is of course not open to controversy that the giving of an instruction upon an issue not framed by the pleadings nor upon which

there was any evidence adduced to warrant the pleadings to be treated as amended, if excepted to, is reversible error. Mutual Refining Co. v. Union Refining Co., 124 Okla. 286, 255 Pac. 1015; Gulf, C. & S. F. Ry. Co. v. Harpole, 111 Okla. 301, 239 Pac. 609. We have examined the instructions thus challenged in connection with the instructions as a whole, and are of the opinion that under the record they do not come within the purview of the rule plaintiff relied on, for which reason this contention is without basis. Commercial Securities Co. v. Jolly, 103 Okla. 8, 229 Pac. 193; City of Tulsa v. Lloyd, 129 Okla. 27, 263 Pac. 152.

It is finally contended that "the court erred in not directing a verdict for the plaintiff in the amount of $90.24, the amount of the deficit the first day on which the account showed a deficit." As it does not appear from the record that the point was raised in the trial court, nothing is thereby presented for our consideration. McGrath v. Campbell, 124 Okla. 286, 256 Pac. 28; Marshik v. Farmer's Union Co-Operative Exchange, 123 Okla. 76, 250 Pac. 136.

For the foregoing reasons, the judgment of the district court is affirmed.

BENNETT, REID, LEACH, and HERR, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 2 R. C. L. p. 206; 1 R. C. L. Supp. p. 444; 4 R. C. L. Supp. p. 92; 5 R. C. L. Supp. p. 81; 6 R. C. L. Supp. p. 76. See "Appeal and Error," 3 C. J. §636, p. 742, n. 3; 4 C. J. §1651, p. 64, n. 47; §2834, p. 853, n. 61; §2853, p. 879, n. 83. "Trial," 38 Cyc. p. 1778, n. 73; p. 1779, n. 75.