THE UNION PACIFIC RLY. CO. v. HERBERT HARRIS.

1. RAILROAD STOCK LAW; *Verdict, Sustained.* Where an animal is seen alive during an afternoon in the vicinity of a railroad track, and the next morning the tracks of the animal are traced upon an open bridge, and along that bridge for the space of twenty or twenty-five feet appear blood, and bunches of hair of color corresponding with that of the animal, and the animal, showing marks of violence, is found dead some time thereafter in the water below the bridge, and a witness testifies that during the night after the animal was seen alive he heard a train whistle as it approached the bridge and then heard something fall into the water and swimming therein, *held*, that a verdict of the jury that the animal was killed by the railroad company in the operation of its railroad will not be set aside as against the evidence.

2. FENCE; *Cattle-Guards.* Ch. 94 of the Laws of 1874 requires, not merely that the railroad company should build a fence parallel with its road, but also that where its track crosses a highway or other place where a side-fence is improper, that it should protect its track and right of way by cattle-guards and an end-fence.

*Error from Leavenworth District Court.*

AT the September Term, 1881, of the district court, plaintiff *Harris* recovered a judgment for $90 and costs against the *Railway Company,* which brings the case here. The facts appear in the opinion.

*J. P. Usher,* for plaintiff in error.
*Lucien Baker,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: Defendant in error, plaintiff below, recovered a judgment in the district court of Leavenworth county for the value of a mule, killed by one of the trains of the railway company. The action was brought under chapter 94 of the Laws of 1874. Plaintiff in error asks a reversal of that judgment on two grounds: *First,* because there was no testimony showing that the animal was killed or injured by the railroad company in operating its road; *second,* because the supposed injury did not occur at a place on the railroad where it was lawful or proper for the company to fence.

The first is a question of fact; and while it is true no witness saw the animal struck by one of the trains of defendant, we think there was testimony sufficient to sustain the verdict of the jury in this respect. The mule was last seen alive on the afternoon of March 22d. It was then alive in the streets of the village of Linwood, and was found dead some time thereafter in the Kaw river. Stranger creek runs through the village of Linwood. This creek is crossed by the railroad track, on an open bridge. The morning of the 23d the tracks of the animal were discovered leading upon this bridge, and along the bridge from the east end for from 15 to 25 feet were found blood and hair, the hair corresponding in color with that of the mule. A witness testified that at five minutes to twelve of the night of March 22d, he heard the westbound train whistle as it approached the bridge, and then he heard something fall into the water and swimming afterward.

It appears that two trains belonging to the defendant passed west over that bridge that night. The engineer of one testified that he saw no stock; the engineer of the other was not a witness, and no testimony was offered as to whether that train ran into any stock or not. It is true the engineer of the one train testified that he passed the bridge at 11:35, and that the other train passed before that time. Now while there is a conflict between the engineer and plaintiff's witness as to the hour, yet either witness, especially the plaintiff's witness, might be mistaken as to the time, and this without in any way discrediting his testimony as to the fact. So that we have this testimony, which was properly before the jury for its consideration, and sufficient, we think, to justify its finding against the company. The animal was seen alive in the afternoon. In the night-time a train was heard to whistle for stock as it approached the bridge, and immediately thereafter something was heard to fall into the water and to commence swimming therein; the next morning the tracks of the animal were discovered leading to the bridge, and on it for a space of from 15 to 25 feet are indications that, either the animal was struggling forward from tie to tie, or was pushed forward by a train until it went over into the water. This testimony tends very strongly to show that the animal was thrown off the bridge by the train, and in a civil case is sufficient to sustain a verdict to that effect. It is a very different case from that of the *Railroad Company v. Seeley*, 24 Kas. 265, for there the only testimony really was, that the animal was found injured, and there was no testimony which showed that the animal was injured by the train of the railroad company or on its track, or even that it had been near the track on the day of the injury; and from the simple fact of the injury, we held that a jury was not warranted in finding that the railroad company caused it.

Upon the other question counsel for the railroad company have discussed several matters, many of which we think are without any bearing upon the real question in the case. The facts are these: The railroad track runs through the village

of Linwood, crossing Stranger creek in the village on an open bridge, as heretofore stated. On the east side of the Stranger and about 100 feet from its bank, Mill street crosses the railroad at right angles, and, except where Mill street strikes the track, the road is properly fenced with line fencing. The only open way of reaching the track is along Mill street. On the east side of Mill street the right of way is protected by cattle-guards as well as by a fence. On the west side of Mill street the right of way is protected only by the line fences. There is no cattle-guard under the track and no fence from the track to the line fence, so that an animal coming down Mill street can pass from it directly upon the right of way outside of the track or upon the track itself. Now whether the right of way is 100 or 400 feet in width is entirely immaterial. The law of 1874 does not require that the railroad company shall build the fence on the extreme limits of its right of way; it is sufficient if the road itself is securely fenced. So far as the application of the law of 1874 to fencing within the limits of an incorporated city bears upon the question, it is unnecessary to add anything to what has already been said in the case of the same plaintiff in error *v.* Dyche, just decided. Neither is it necessary to consider whether the district court ruled correctly in submitting to the jury as a question of fact whether this track was properly fenced in. It is clear that the road was properly fenced except as to the matter hereinbefore stated; and it is also clear from the testimony that the animal came down Mill street, and from it got upon the track; so that if all that is required of the railroad company is a fence parallel with its track, and nothing is required where a highway crosses the track to prevent the animals from passing from such highway upon its track or right of way, then beyond question the company was not liable in this case. On the other hand, if the statute requires not merely a fence parallel with the track, but also cattle-guards or other protection wherever a highway crosses the railroad track, then the conclusion of the jury and court was correct and the judgment must be affirmed. Counsel for the

14 — 28 KAS.

company contends that as the law of 1874 does not name cattle-guards, none are required; that it discharges all duty imposed by that statute when it builds a fence parallel with its road, and thus separating the road from adjoining fields. We are constrained to differ with counsel, and to hold that the end as well as the side of the track must be protected. Section 5 of the law of 1874 reads: "This act shall not apply to any railroad company or corporation, or the assignee or lessee thereof, whose road is *inclosed* with a good and lawful fence, to prevent such animals from being on such road." Now can anything be said to be inclosed with a good and lawful fence when the only fences are the side-fences, and there is no protection on the ends? The word "inclose" is defined by Webster, "to surround, to shut in, to confine on all sides," etc. It may be said that no fence is possible across the track, because that would prevent the free passage of trains, and that as no fence can be required across the track, the statute must be held to apply only to the parallel fences; but the fence law, which was in force long before the passage of the act of 1874, after prescribing in the first three sections what shall constitute lawful fences, in § 4 reads: "Fences of the material and of the height and sufficiency aforesaid, and all brooks, rivers, creeks, ditches and constructions which shall be equivalent thereto in the judgment of the fence viewers within whose jurisdiction the same may be shall be deemed sufficient and legal fences." Now a cattle-guard is no more than a ditch, and with this before them as the statutory definition of what shall be deemed a good and lawful fence, the legislature in 1874 enacted that the road must be *inclosed* with a good and lawful fence, and to make its meaning more emphatic it added: "To prevent such animals from being on such road." The mere building of a fence along the side of the track, leaving the ends unprotected, instead of inclosing the road so as to prevent animals from being on the track, would amount to little more than a cattle trap to catch and confine animals that might chance to be on the highway.

The statute of Indiana, from which ours was in a large meas-

ure copied, in its seventh section reads: "This act shall not apply to any railroad securely fenced in, and such fence properly maintained." The supreme court of Indiana in several cases have held that that language required cattle-guards at public crossings. (*Rld. Co. v. Avery,* 31 Ind. 277; *Rld. Co. v. Morgan,* 38 Ind. 190; *Rld. Co. v. Bonnell,* 42 Ind. 539.)

Again, § 1 of chapter 81 of the Laws of 1869 reads: "When any railroad runs through any improved or fenced land, said railroad company shall make proper cattle-guards on such railroad when they enter and when they leave such improved or fenced land." Now in this case, where the railroad track left Mill street it passed from a highway upon land fenced upon both sides, so that within the obligations of that statute it was the duty of the railroad company to place cattle-guards on the west (as the testimony shows it had done on the east) side of Mill street.

We think therefore that whether the rulings of the district court upon all the questions suggested by the learned counsel were technically correct or not, the conclusion of the jury was correct, and must be sustained. The judgment of the district court will therefore be affirmed.

All the Justices concurring.