## MISSOURI, K. & T. R. CO. v. BANDY.

No. 8794—Opinion Filed March 25, 1919.

Rehearing Denied June 10, 1919.

(Syllabus by the Court.)

**1. Railroads—Maintaining Fences and Cattle Guards.**

It is the duty of every person or corporation owning or operating a railroad in Oklahoma to build and maintain a fence along its right of way, except at public highways and station grounds, and this imposes the duty upon such person or corporation to construct and maintain suitable cattle guards and wing fences at points where public highways cross the tracks of such person or corporation.

**2. Same—Injuries to Animals—Highway Crossing.**

Where a public highway crosses a railway at an oblique angle, the railway company must construct its cattle guards and erect its wing fences upon the margin of the highway, so that the highway is no tencroached upon, and all of its right of way near the highway is fenced and protected, and if the company erects its cattle guards and fences back from the highway, so as to form a pocket, it may be held liable for animals killed at such place, on the ground that it had not discharged its duty in fencing its track as required by law.

**3. Same—"Station Grounds."**

Station grounds prima facie include all the right of way left unfenced between switches and cattle guards on either side of the platform, with the switches and side tracks, unless they are shown to be unreasonable in extent.

**4. Same—Question for Jury—Fences—Station Grounds or Public Highway.**

Whether a certain place constitutes a part of the station grounds, or a public highway, where a railway company is by statute exempt from maintaining a fence, is a question of fact for the jury.

**5. Same—Burden of Proof—Fences.**

The burden was upon the defendant to show that the animals were killed at a point where it was not required by statute to maintain a fence.

**6. Same—Effect of Failure to Fence Right of Way.**

Where animals enter upon railroad tracks at a point where the railroad company had failed to erect and maintain a fence as required by law, and it is not shown that the owner was willfully negligent in permitting them to stray upon the track, the railway company is liable for the value of such animals, regardless of negligence in the running or operating of its trains.

**7. Same—Last Clear Chance.**

The fact that the accident could not have been avoided after the discovery of the animals upon its track does not relieve defendant from liability, because of the fact that the animals entered upon defendant's tracks at a point where it had failed to erect a fence in accordance with its statutory duty.

Error from County Court, Washington County; Robert D. Waddill, Judge.

Action by G. T. Bandy against the Missouri, Kansas & Texas Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Clifford L. Jackson, W. R. Allen, and M. D. Green, for plaintiff in error.

A. O. Harrison, for defendant in error.

HARDY, C. J. G. T. Bandy commenced this action against the Missouri, Kansas & Texas Railway Company to recover $550 damages for two horses struck and killed by south-bound passenger train of defendant at Dewey, Okla., on the night of June 29, 1915. The acts of negligence alleged were the operation of defendant's train at an excessive rate of speed, failure to give any warning signal for the public crossing near which the animals were killed, and that the point where the accident occurred was near a public road crossing, and was not within the station ground limits, and that defendant had failed to maintain right of way fences at that point. Verdict was for plaintiff, and defendant appeals.

To reverse the case defendant urges that the evidence shows the animals were struck and killed on a public crossing. The point where the animals were killed was south of the depot at and outside the city limits of the town of Dewey, and several hundred feet south of the south end of the passing track at said station. According to the plat introduced by plaintiff, from the south end of the passing track to the center of the public highway crossing is a distance of 793 feet. The tracks of defendant are crossed by the public highway at an oblique angle of about 30 degrees. South of this highway the tracks of defendant are fenced, and at a point from 30 to 80 feet south of the center line of this

highway defendant had erected cattle guards and wing fences across its track, which connect with the right of way fence. On the west side of the track the right of way fence extends north beyond the cattle guards and wing fence to the south line of the highway, where it connects with another fence extending in a northwesterly direction along the south line of the highway. There is left south of the public crossing a space on the west side approximately 80 feet from the center of the highway to the cattle guards, and on the east side approximately 30 feet of open space in the shape of a right-angled triangle. The horses were struck, according to the testimony of the engineer, and immediately rolled off the pilot against the west wing fence, and the force of the impact broke down the wing fence. The engineer testified that the horses were not carried any distance by the engine, but immediately rolled off against the fence. He also testified that the horses were struck right on the crossing. The fireman testified that he did not see the horses when they were struck, but that he thought they were struck on the crossing, or a little south of it. The section foreman testified that he examined the track at the place of the accident the next morning; that the horses were knocked or thrown against the wing fence; he saw no marks on the track to indicate where the train picked up the horses; that he saw marks where something was dragged from the end of the outside crossing to the place where the horses were found.

Upon this evidence it was for the jury to say whether the horses were struck upon the crossing or south of the crossing. If the horses had gotten upon the tracks at the crossing, and were killed at the point where the cattle guards and wing fence connected with the right of way fence, the plaintiff would be entitled to recover. By sections 1435 to 1438, inclusive, Rev. Laws 1910, it is made the duty of every person or corporation owning or operating a railroad in Oklahoma to build and maintain a fence along its right of way, except at public highways and station grounds, and this imposes the duty upon such person or corporation to construct and maintain suitable cattle guards and wing fences at points where public highways cross the tracks of such person or corporation. Union Pacific Railway Co. v. Harris, 28 Kan. 206.

The defendant showed by its witnesses that it was considered good railroading to construct cattle guards and wing fences at right angles to its track, and not along the margin of the highway, although said highway crossed its track at an oblique angle; but it further appeared that they were sometimes constructed obliquely across the tracks along the margin of the highway. There is no great inconvenience, unnecessary expense, or other disadvantage in constructing them at an oblique angle made to appear, such as would prevent the construction of cattle guards and wing fences along the margin of the highway, and in the absence of such reasons it was the duty of defendant to construct said cattle guards and wing fences along the margin of the highway, so as not to leave a pocket or trap into which animals passing along the highway could be driven and killed. If such were not the law, no duty would rest upon persons or corporations operating lines of railroad to fence its track, except to the extreme point of contact between highways and its own right of way, and should a highway cross the tracks at an acute angle the distance between the points of contact would sometimes be great. In one reported case it appears that the distance between cattle guards was 860 feet. Andre v. Chicago & N. W. R. R. Co., 30 Iowa, 107.

It is usually held that, where a public highway crosses a railway at an oblique angle, the railway must construct its cattle guards and erect its wing fences upon the margin of the highway, so that the highway is not encroached upon and all of its right of way near the highway is fenced and protected, and if the company erects its cattle guards and fences back from the highway, so as to form a pocket, it may be held liable for animals killed at such place, on the ground that it had not discharged its duty in fencing its track as required by law. 3 Elliott, Railroads, sec. 1197, p. 444; 2 Thompson on Negligence, sec. 2057, p. 706.

It is next urged that defendant is not liable because the place of the accident was on the station grounds. The highway crossing, cattle guards, and wing fences were outside and south of the limits of the town of Dewey, and according to plaintiff's plat it was 793 feet from the south point of the passing track to the center of the highway and from the center of the highway to the west wing fence, 80 feet. This court has held that station grounds, prima facie, include all the right of way left unfenced between the switches and cattle guards on either side of the platform with the switches and sidetracks, unless they are shown to be unreasonable in extent. St. L. & S. F. R. Co. v. Brown, 32 Okla. 483, 122 Pac. 136.

Whether a certain place constitutes a part of the station grounds, or a public highway, where a railway company is by statute exempt from maintaining a fence, is a question

of fact for the jury. St. L. & S. F. R. Co. v. Smith, 41 Okla. 163, 137 Pac. 714. The burden was upon defendant to show that the animals were killed at a point where it was not required by statute to maintain a fence. St. L. & S. F. R. Co. v. Brown, supra; A., T. & S. F. R. Co. v. McCall, 48 Okla. 602, 150 Pac. 173.

It appears that some of the passenger trains operating over defendant's line of railway are more than 500 feet in length, and that some of its freight trains are half a mile in length. Some of the witnesses testified that it was necessary to have as part of the yard limits a distance beyond the end of the switch equal to the length of the trains passing over defendant's track. If plaintiff's plat be correct, the distance from the point of the switch to the highway was greater than the length of passenger trains, but less than the length of some freight trains passing this point. If the plat introduced by defendant be correct, the distance from the point of the switch to the wing fence and cattle guards would be much less than the length of either freight or passenger trains. In addition to the passing track referred to there was a long track extending from a point north of the highway south to the junction of defendant's road with that of the Atchison, Topeka & Santa Fe Railway Company, known as the "Jim Track," or storage track, used principally for the purpose of furnishing cars by both railroads to a large cement plant. Cars intended for the cement plant were frequently stored along this track. It also appeared that, until about three years prior to the trial of this case, a cattle guard had been maintained at a point north of the highway crossing, but had been removed to its present location. Defendant had fenced its track south of the highway, and there was evidence that the cattle guards and wing fences were constructed at right angles because it was considered "good railroading," and not because it was necessary as part of the station grounds; for if it had been necessary to leave unfenced south of the south end of the passing track a distance equal to the length of its longest trains, the cattle guards would have been located at a point much further south than they were. Some of defendant's witnesses gave as the reason for the construction of the cattle guards and wing fences south of the highway that it was impracticable to maintain them north of the highway, and that they were placed south of the highway for the purpose of getting around to and from the crossing. The jury were therefore warranted in finding that the animals were killed outside the station grounds of defendant. From the fact that

the company built right of way fences south of the highway a strong inference arises that they were built only at a place required by statute. Midland Valley v. Hardesty, 38 Okla. 559, 134 Pac. 400.

It is urged that the animals were unlawfully at large, and therefore trespassing upon the premises of defendant, and that defendant owed no duty to sound statutory crossing alarms and no duty other than to use ordinary care after their discovery. Had the animals been killed upon the highway or within the station grounds, this contention would be well taken; but inasmuch as it appears that the animals entered upon the tracks at a point where defendant had failed to erect and maintain a fence as required by law, and it was not shown that plaintiff was willfully negligent in permitting them to stray upon the track, defendant is liable for the value of such animals, regardless of negligence in the running or operation of its trains. St. L., I. M. & S. R. Co. v. Dawson, 57 Okla. 655, 157 Pac. 751; C., R. I. & P. R. Co. v. Westheimer & Daube, 44 Okla. 287, 144 Pac. 356; St. L. & S. F. R. Co. v. Steele, 37 Okla. 536, 133 Pac. 209.

The fact that the accident could not have been avoided after the discovery of the animals does not relieve defendant from liability. This contention, like the preceding one, fails because of the fact that the animals entered upon defendant's tracks at a point where it had failed to erect and maintain a fence in accordance with its statutory duty.

The judgment is affirmed.

All the Justices concur.