# INTERNATIONAL HARVESTER CO. et al. v. SNIDER et al.

No. 28049. March 21, 1939.

Clarence Black, for plaintiffs in error.

Meacham, Meacham & Meacham, for defendants in error.

DANNER, J. The plaintiffs bought a tractor and certain equipment from the defendants Dave Reimer and Cornelius Reimer, a partnership doing business under the trade name of Corn Hardware Company, hereinafter called the hardware company. The tractor did not function properly, and the plaintiffs thereafter filed suit and obtained a verdict and judgment for damages allegedly sustained from breach of a warranty made in connection with the sale. The judgment was against the hardware company and also against International Harvester Company of America, hereinafter called the harvester company, manufacturer of the tractor and equipment. Said judgment also denied the cross-petition of the harvester company seeking recovery on the promissory notes given by plaintiffs and indorsed by the hardware company to the harvester company. The defendants appeal.

We first consider the contention of the harvester company that the evidence was insufficient to prove that the hardware company was its agent in making the sale and warranty. The case against the harvester company was predicated entirely upon existence of that relationship.

We state the facts as favorably to the verdict as the record will permit. The contract between the harvester company and the hardware company was introduced in evidence. It and the testimony show that there was an out and out sale of the tractor from the harvester company to the hardware company. The hardware company gave its promissory note in payment, but the business arrangement between the two companies was that when and if the hardware company should find a buyer, the harvester company would deliver back the hardware company's note in exchange for an indorsement of the buyer's note and mortgage if the harvester company, upon investigation, should become satisfied with the buyer's credit worthiness. This was the custom between the two companies as to sales in general, and was adhered to in the present instance. During the negotiations leading up to the sale, the harvester company investigated the financial standing of the plaintiffs, and when the sale was consummated, accepted indorsement and assignment of the notes and mortgage which had been executed in favor of the hardware company by the plaintiffs. No employee of the harvester company made any representations or talked with any of the plaintiffs prior to the sale and delivery of the tractor, so far as the record shows. The tractor had for some while prior to the sale been in possession of the hardware company, on display in its stock.

The tractor, from the beginning, would

not operate properly. The plaintiffs complained to the hardware company, which sent employees to the plaintiffs' farm, on this and several later occasions. When those employees were unsuccessful in their efforts to make the tractor function, the hardware company notified the harvester company's branch office in Oklahoma City, and from that office several representatives and employees were sent to the plaintiffs' farm, and they too were unable to make it work. Conversations were had between those representatives and plaintiffs relative to an adjustment of some sort, the plaintiffs asking them to substitute another tractor, which they refused to do. Their belief and contention at the trial was that at first the tractor worked properly and that then plaintiffs or others had intentionally damaged the machine.,

We fail to find a sufficiency of evidence to sustain the finding of agency. The plaintiffs bought the tractor, admittedly, from the hardware company. The hardware company owned it. If that ownership was fictitious, the evidence failed to reveal it. The sole reasons advanced by plaintiffs as supporting their contention that an agency existed are these: (1) That the harvester company's investigation of their credit standing, and willingness to accept their notes, appeared necessary before the hardware company would agree to sell; (2) that a representative of the harvester company negotiated with them concerning an adjustment of their difficulties and would not agree with the demands of plaintiffs; (3) the contract of sale entered into between plaintiffs and the hardware company, which contract, so far as is shown by that part which is copied into the record, does not even mention the harvester company.

The hardware company's above-mentioned requirement that the harvester company accept the plaintiffs' notes did not make the former company the agent of the latter. Clearly enough the requirement was for the benefit of the hardware company, so that it could, by discounting the notes and receiving cash at the time or later, regain its own note and what profit there was in the deal. There was nothing in the contract of sale, entered into between the two companies, requiring this method of payment, or which in any manner could indicate that the hardware company was acting as the agent of the harvester company. Plaintiffs cite International Harvester Company of America v. Watkins, 127 Kan. 50, 272 P. 139, wherein the same contracts were involved as were used in the present case. But in that case the court assumed that the dealer was **not** an agent; the contract was considered solely for the purpose of determining whether the harvester company was a holder in due course of the notes sued upon, a purpose for which it may or may not be of benefit in the present case as affecting the cross-petition which the defendant harvester company filed against the plaintiffs on their notes, when that issue is tried again. But the case is of no help on the question of agency.

Nor do we think the fact that the harvester company's employees were sent out by that company to repair the tractor should be construed as reaching back and transforming the hardware company into an agent of the harvester company at the time of the sale. Naturally the harvester company was desirous, as are most manufacturers of large machinery, that their products function properly and that users thereof be satisfied with performance thereof. That does not indicate that the harvester company at the time of sale had any control over the representations made by the hardware company, or ratified those representations. It is not shown that the harvester company's representatives were told or had knowledge of any such representations. The sole purpose of their visits to plaintiffs' farm was to make the machine function, although on one or two of those visits the plaintiffs did attempt to obtain an exchange of machines, to which the harvester company's employees would not consent.

A fair and impartial appraisal of this record does not permit the statement that it contains evidence reasonably tending to sustain the finding that the hardware company was the agent of the harvester company. Since liability of the harvester company is predicated entirely on that theory, the judgment against that company should be reversed. And since that part of the judgment denying recovery to the harvester company on its cross-petition against the plaintiffs on their notes was based solely upon assumption of that relationship, it too must be reversed and the issue be determined upon retrial.

We now consider the separate appeal of the hardware company. That company contends that the trial judge erred in his instruction to the jury on the measure of damages. That instruction was:

"You are instructed that in case you find for the plaintiffs and against the defendants

you will fix the amount of plaintiffs' recovery at such sum as you find plaintiffs were damaged in loss of time, and being forced to relinquish government contracts, if any, in an effort to make said tractor work; cancellation of note given in part payment and for the return of any sum paid in cash as part payment on the purchase price of the tractor and farm machinery in question."

The above instruction allowed recovery for (1) loss of time, (2) damages from relinquishment of government contracts, (3) any payment made by plaintiffs on the purchase price, and (4) cancellation of the notes, not only as against the hardware company but also as against the harvester company. (Having come to the conclusion that the hardware company was not the agent of the harvester company, and there being no contention that for other reasons the harvester company was not a holder in due course, and the harvester company having raised the question of correctness of the instruction, it would be necessary to hold the instruction erroneous anyway, in so far as the harvester company is concerned, in permitting cancellation of the notes in its hands, but we now consider the instruction only as it affected the other plaintiff in error, the hardware company).

The written contract of sale entered into between the plaintiffs was signed by one of the plaintiffs and was not signed by the others, but the plaintiffs admitted in their testimony that the signer was acting for all of them in the entire negotiations and that they were partners in operating the farm, so we need consider that angle of the controversy no further.

Immediately above the signature of that plaintiff is the following:

"I am retaining a copy of this order, which **together with the warranty and agreement on the back hereof,** is understood to be our entire contract."

If, then, any lawful agreement appears on the following page of the contract, the plaintiffs, the defendant, and this court are bound thereby, there being no fraud, mutual mistake, or the like involved. Thereon this express stipulation as to the measure of damages was agreed to between the parties:

"If it then fails to work properly and prompt notice is given, the Seller will send a man within a reasonable time to put it in order, the Purchaser agreeing to render friendly assistance. If it still fails to work properly and the Purchaser promptly returns it to the Seller at the place where delivered, the Seller will refund the amount paid, which shall constitute a settlement in full. Retention of possession or continued use shall constitute an acceptance and satisfaction of warranty and further assistance rendered the Purchaser shall not be considered a waiver of this provision."

Under the terms of the foregoing agreement of the parties, return of the amount paid was to constitute settlement in full. It would preclude recovery of special damages, if enforced. It would preclude recovery for loss of time, and damages connected with relinquishment of the government contracts, which items were permitted by the instruction under consideration.

The plaintiffs do not contend that such a provision in a contract is void or unenforceable as a matter of law. We have held that it is not, and that it is binding on the parties. Moline Plow Co. v. Wilson, 74 Okla. 89, 176 P. 970, wherein the contract provided that "the purchaser shall return it at once .* * * and another machine to be given in its place; and this shall be a complete settlement between the purchaser and ourselves." That case followed Scott v. Vulcan Iron Works Co., 31 Okla. 334, 122 P. 186, where the stipulation was to "refund all money paid on the purchase price, and defendant waives all claim for possible damage." Still later cases are to the same effect. Moline Plow Co. v. Adair, 76 Okla. 4, 183 P. 499; Moline Plow Co. v. Hooven, 76 Okla. 250, 185 P. 102; Long v. Ideal Electric & Manufacturing Co., 120 Okla. 63, 250 P. 504.

As stated, while the plaintiffs do not question the enforceability of such a stipulation, they do contend that same was waived by the defendant when, after the machine failed to work, the defendant demanded that plaintiffs continue to use it. Plaintiffs say the evidence shows that they relied upon the promises of the defendant to make the machinery work and were induced thereby to keep trying to use it, and that when it was too late for the plaintiffs to get their crops planted, the defendant then informed plaintiffs that a return of the machine would not be accepted. Assuming that such conduct on the part of the seller would waive the stipulation as to the measure of damages, still the instruction would be erroneous unless the only conclusion which could be drawn from the evidence was that the seller did induce plaintiffs to continue use of the machine. The instruction has the effect of nullifying the stipulation regardless of the jury's belief as to whether the seller did induce in-

540

action on the part of the plaintiffs. But the evidence was in conflict on this issue. The defendants Reimer and their mechanics and employees testified that on each occasion when they visited the farm of plaintiffs they either found the tractor working properly or found only some small maladjustment, which they speedily corrected. The evidence of defendants, if believed, would thoroughly refute any finding that they lulled the plaintiffs into a continuation of use of the tractor. Thus, if it should be held that the instruction was abstractly correct on the waiver theory, it still would be incorrect in **assuming** that a waiver existed, the evidence being in conflict on that question.

The plaintiffs also say that if the instruction is incorrect, the defendants are precluded from complaining, because of their failure to submit or request a correct instruction. Oklahoma Railway Co. v. Boyd, 167 Okla. 151, 28 P.2d 537. But the reason underlying the rule that one may not complain of an incorrect instruction unless he requests a correct instruction, in the cases where that rule is applicable, is that it is unfair to charge the trial judge with error on rulings involving other than fundamental issues unless he has had his attention brought to the matter concerning which it is urged that he erred. But in the instant case we find that the attention of the trial judge was brought specifically thereto. The other defendant, the harvester company, did request an instruction that the plaintiffs could not recover for loss of the government contracts. However, that is not the only manner in which his attention was brought to it. We find, furthermore, that the instruction preceding the one in question followed so closely the language of the written stipulation that it is clear the trial judge had full knowledge of that stipulation. Furthermore, the contract wherein the stipulation was included was the very essence of the defense, and the entire lawsuit hinged about it. Both defendants specifically referred in their answers to the said written contract, and appended same as an exhibit to the answers. They made special reference to the warranty, and the stipulation which has been copied above constitutes almost the entire body of that warranty. The trial judge could not have examined the warranty without becoming fully apprised of the stipulation concerning damages, and the fact that he did have notice thereof is evidenced by the other instructions which were in fact given.

It is the duty of the trial court upon its own motion to properly instruct upon the decisive features of the case, and a failure to do so constitutes reversible error. McIntire v. Burns, 172 Okla. 152, 42 P.2d 143; Martin v. McCune, 170 Okla. 196, 39 P.2d 978; Swift v. McMurray, 133 Okla. 104, 271 P. 635. Without laying down any hard and fast rule as to whether the measure of damages is ordinarily so "elemental" as to come within the doctrine of the cases just cited, we are convinced that under the facts of this particular case the attention of the trial judge was sufficiently brought to the terms of the stipulation that the plaintiff in error is not precluded from urging the error because of the fact that an instruction in the precise terms of the contract was not requested.

Under the rule of the Moline Plow Company Case and other decisions cited above, the stipulation as to damages was binding on the parties and it was error to give the instruction in question. The judgment is reversed in its entirety, and the cause is remanded for a new trial.

BAYLESS, C. J., and CORN, HURST, and DAVISON, JJ., concur.