## KANSAS, OKLAHOMA & GULF RY. CO.
### v.
### KEIRSEY.
#### No. 35969.

Supreme Court of Oklahoma.

Jan. 19, 1954.

Rehearing Denied Feb. 9, 1954.

James D. Gibson, Muskogee, R. T. Stinson and Stanley Williams, Durant, for plaintiff in error.

Louie Gossett, Denton Gossett, Durant, for defendant in error.

ARNOLD, Justice.

Plaintiff Cliff Kiersey filed his petition in the District Court of Bryan County seeking to recover damages against Kansas, Oklahoma & Gulf Railway Company for the death of a cow. The court overruled defendant's demurrer to the petition; defendant excepted and declined to plead further; the court entered judgment in favor of plaintiff for the amount prayed. From such judgment defendant brings this appeal.

Plaintiff alleged in his petition that on June 30, 1952, he was the owner of a blue roan cow of the value of $180; that this cow was kept in a pasture through which passed defendant's railroad tracks; that at the point where the tracks crossed a highway and entered plaintiff's pasture defendant had constructed a cattle guard; that plaintiff's cow walked across the cattle guard and ate newly-cut Johnson grass, which was across the cattle guard and on the highway and which had been cut a few days before by defendant's employees, from which the cow died; that the cow's death was due to the negligence of defendant in that it constructed the cattle guard flat on the ground and failed to excavate underneath the cattle guard, which rendered the guard ineffectual, and that it failed to fence its right of way.

66 O.S.1951 § 141 provides that it is the duty of a railroad to fence its road, except at public highways and station grounds, with a good and lawful fence, and Section 144 provides that upon its failure to build such fence it shall be liable for all animals killed by reason of such failure to construct a fence. We have held that these statutes impose liability without proof of negligence only for injuring cattle upon the track by operation of the railroad trains. Missouri, O. & G. Ry. Co. v. Brown, 46 Okl. 735, 148 P. 1040; Kurn v. Immel, 184 Okl. 571, 89 P.2d 308. Plaintiff's petition shows on its face that the cow was killed not by operation of the railroad but by eating Johnson grass. It therefore stated no cause of action under the statute.

At common law there was no duty of a railroad company to fence its right of way against cattle. Missouri, O. & G. Ry. Co. v. Brown, supra. Likewise there was no duty at common law to construct cattle guards to prevent the intrusion of cattle. Plaintiff's petition does not state a cause of action at common law since the allegation of negligence concern the cattle guard and the failure to fence.

Demurrer to plaintiff's petition should have been sustained.

Reversed.

HALLEY, C. J., JOHNSON, V. C. J., and CORN, O'NEAL and WILLIAMS, JJ., concur.

WELCH, DAVISON and BLACKBIRD, JJ., dissent.

BLACKBIRD, Justice (dissenting).

I do not agree with the majority opinion. I think that the facts set forth in plaintiff's petition, together with the inferences to be reasonably drawn therefrom, state a cause of action against the defendant, and therefore, that the judgment of the trial court should have been affirmed.

The exact wording of the statutes prescribing a railroad's duty to erect and maintain fences along its right of way involved herein, Title 66, O.S.1951 § 141, is as follows:

"It shall be the duty of every person or corporation owning or operating any railroad in the State of Oklahoma to fence its road, except at public highways and station grounds, with a good and lawful fence."

Title 66, O.S.1951 § 144:

"Whenever any railroad corporation or the lessee, person, company or corporation operating any railroad, shall neglect to build and maintain such lawful fence, such railroad corporation, lessee, person, company or corporation operating the same, shall be liable for all animals killed by reason of the failure to construct such fence."

It has been held that Sec. 141, supra, includes the duty of constructing and maintaining suitable cattle guards where public highways cross the tracks. Missouri K. & T. Ry. Co. v. Bandy, 75 Okl. 57, 181 P. 313; Midland Valley R. Co. v. Bryant, 37 Okl. 206, 131 P. 678.

I find nothing in the plain wording of Sec. 144, supra, which restricts the liability of the railroad "for all animals killed" to only those that are killed by its trains. Reference to the two Oklahoma cases cited in the Majority opinion clearly demonstrates that they do not hold this, nor do they hold what that opinion says they do. The syllabus in the first one, Missouri O. & G. Ry. Co. v. Brown, 46 Okl. 735, 148 P. 1040, which was not an action for damages to cattle, but only to growing crops, is as follows:

"It is error to instruct a jury that, under the law, the defendant company is required to fence its right of way to protect landowners whose land is immediately adjacent to the right of way from the trespass of cattle that otherwise might enter over the right of way in and upon the adjacent land."

The conclusion upon which the decision in that case turned, and the only one necessary to arrive at therein, is stated in the body of the opinion as follows:

"The statute is not broad enough to cover damages sustained by adjacent landowners by reason of animals belonging to a third party trespassing upon such adjacent land."

It is true that the early Missouri case, Clark's Adm'x v. Hannibal & St. J. R. Co., 36 Mo. 202, quoted in said opinion, holds:

"Railroad corporations are not required to fence in their tracks so as to prevent cattle from straying upon the adjoining fields. If they fail to fence their tracks and put up proper cattle-guards, they become liable to the owners of such stock as may be injured while straying upon the track, without any proof of negligence. (R.C.1855, p. 437, § 5.) The object of the statute was the protection of the railroad, the safety of passengers and trains, and the prevention of accidents and injuries to cattle or other animals straying on the track."

But the statutes involved therein were quite different in wording from the ones involved here. This is shown by the following excerpt from said opinion:

"The statute concerning Railroad Associations (R.C.1855, § 52) requires railroad corporations to erect and maintain fences on the sides of their roads, and cattle-guards also, where they pass through enclosed fields, 'suitable and sufficient to prevent cattle and animals from getting *on the railroad,*' and provides that until such fences and cattle-guards are made, the corporation shall be liable, without proof of negligence, for all damages done by their agents or engines to animals thereon; but that, after such fences and guards are made, they shall not be liable for any such damages *unless* 'negligently or wilfully done.' This

section was so amended in 1864, as to authorize the owner of enclosed fields to build such fences at the expense of the railroad company, but without changing the object or principle of the act." (Emphasis added.)

If we are to look to early Missouri cases for precedent in a matter that is *exclusively controlled by the particular wording of our own statutes,* perhaps we should consider the reasoning in a later (1906) Missouri case, Kirkpatrick v. Illinois So. Ry. Co., 120 Mo.App. 416, 96 S.W. 1036, 1037, which to me is more persuasive, logical and equitable. That case also involved crop damage, done by hogs of plaintiff's deceased which went from said owner's property onto the defendant railway company's right of way and escaped from there into a corn field belonging to plaintiff's deceased. There the court said:

"Here the plaintiff's deceased had the undoubted right to turn his hogs into his pasture, and thus enjoy his premises, and the defendant owed to him the positive statutory duty of constructing and maintaining a fence along the right of way sufficient to prevent such hogs from passing either upon the track or from the track to his fields. *If the law were otherwise, the plaintiff's deceased would be practically precluded from occupying his pasture and premises by defendant's failure to erect a fence, at the peril of losing his animals without compensation.* The statute imposes upon the railroad company the obligation both to construct and maintain fences along the sides of its right of way sufficient to prevent animals from adjacent pastures going upon the railroad, and escaping therefrom into other adjacent fields. This is a positive statutory duty of the defendant (Davis v. Railway Co., 19 Mo. App. 425), whereas the owner of the animals in the adjacent pastures and fields has the undoubted right to occupy and enjoy his own premises, and is not required to restrain his animals from going upon or about the railroad. This is its duty, not his. Davis v. Railway Co., 19 Mo.App. 425; Gorman v. Rail-

way Co., 26 Mo. 441, 72 Am.Dec. 220; Turner v. Railway Co., 78 Mo. 578–580; Busby v. Railway Co., 81 Mo. 43. *The owner of the adjacent lands has the right to occupy his premises, relying upon the railroad to either perform its duty as to fences, or suffer the penalties resulting from a violation in that behalf.*" (Emphasis added.)

The second of the two Oklahoma cases cited in the majority opinion, Kurn v. Immel, 184 Okl. 571, 89 P.2d 308, held only that:

"Statutes requiring railroad companies to fence their rights of way do not render them liable for injury to cattle by straying, because of absence of a proper fence, onto their rights of way, and from there *onto private property where* they are injured." (Emphasis added.)

A controlling factor in the above opinion seems to have been the view that the railroad company defendant's defective fence, on the basis of the evidence introduced, was not the proximate cause of the cattle's death from eating green African millet in a field "owned by a third person." There this court cited the Annotations at 24 A.L.R. 1057 as authority for the following statement:

"Ordinarily, damages to livestock occurring *off the right of way* of a railroad company are not a natural or probable consequence of a failure of the company to construct or maintain proper fences." (Emphasis added.)

An examination of the above cited annotation reveals that the various jurisdictions referred to therein have adopted divergent views, depending sometimes upon differences in the facts of the cases and other times upon differences in the wording of the statutes involved, as to whether the railroads are liable for injuries to live stock suffered on the land of another, after escaping through their defective fence, but that is not this case, nor have I found a case in which such liability was denied where the facts and the statutes involved were identical with the ones here involved. One case I have found in which the cattle were killed upon the railroad company's right of way is St. Louis-S. F. Ry. Co. v.

Fletcher, 159 Ark. 344, 253 S.W. 12, 33. A.L.R. 445. That case held that a railroad company which sprays poison upon vegetation along its right of way for the purpose of killing it, *with knowledge that trespassing cattle are grazing there, and without any attempt to protect the cattle from injury,* is liable for their death from the poison, although the statute prohibits the owner of cattle from permitting them to run at large under penalty of their being impounded. Another case is Young v. St. Louis, K. C. & N. Ry. Co., 44 Iowa 172. That case held:

> "The liability of a railroad company for injuries to stock, under section 1289 of the Code, attaches when the want of a fence, *in connection with the acts of the company's agents,* is the proximate cause of the injuries." (Emphasis added.)

There, plaintiff's horse went upon the defendant's right of way from a public highway where there was no cattle guard, and the noises from one of defendant's approaching trains caused the horse to run along the track and upon a railroad bridge where it fell among the timbers and received injuries of which it died. Upon the question of proximate cause, the court reasoned as follows:

> "The question for our determination is, was the plaintiff's horse injured by reason of a want of a fence. Had the horse strayed upon the track at the same point and been killed by lightning, it is evident the company would not have been liable, and yet it is equally evident that if defendant's track had been properly fenced the horse would not have been killed. In one sense, then, the horse would have been killed by reason of a want of fence. Again, if the plaintiff's horse had, while in a frolic with other horses, run upon the track and run into the bridge and been injured, the company would not have been liable. Still, it would be true that in one sense the horse would have been injured by reason of a want of a fence.
>
> When, then, may it be said that an animal is injured by reason of a want

of a fence, within the meaning of the statute? It is when the want of a fence in connection with the acts of the defendant is the proximate cause of the injury. The defendant in this case would not have been liable if the horse had run into the bridge and been injured simply through a frolic or freak, because the defendant would have had no reason to apprehend the occurrence of an injury in that way. But when they left the track unfenced, they knew that horses would probably stray upon it from the highway, and if there was only one narrow passage for escape from the track when the train approached, they knew that horses on the track would naturally be driven upon the bridge, and if it could be crossed only upon cross ties a foot or more apart, they would naturally fall into the bridge and be injured. All this, in the exercise of reasonable foresight, should have been foreseen."

In the present case, the railroad company seems to concede, or at lease infer, that under this court's previous holding in Midland Valley R. Co. v. Bryant, supra, plaintiff's petition would state a good cause of action if it alleged that defendant failed to discharge its duty by installing an effective cattle guard, because in speaking of that case, its brief says that case holds "to recover for a defective cattle guard it must be alleged *as it was not in this instance* that defendant has failed to discharge its duty by installing and keeping in good repair 'such guards as are of the *most improved and approved kind* in general use by railroads.'." (Emphasis added.) If plaintiff's petition in this case does not allege in substance, or the equivalent of, what defendant's brief as above quoted says, it does not allege, I simply cannot read it correctly. In order that there may be no mistake about it, I hereinafter quote it verbatim, underlining those portions thereof which plainly and unmistakably allege defendant's breach of duty:

> "3. That on said date and long prior thereto defendant's tracks passed through plaintiff's pasture in which plaintiff grazed his livestock, includ-

ing the aforementioned cow. At a point on said railroad where the tracks crossed the highway and entered plaintiff's said pasture, defendant constructed a *make-shift* stock or cattle guard. That said guard was so *negligently constructed by said defendant as to render it ineffectual.* Notwithstanding that plaintiff called said defects to the attention of the defendant repeatedly the defendant *neglected, failed, and refused to correct and repair said guard* until after plaintiff's cow had been killed *through* defendant's negligence. Plaintiff's cow was killed in the following manner: A few days prior to June 30, 1952, defendant cut the Johnson grass along its right of way, immediately across from plaintiff's pasture across said guard. That on June 30 plaintiff's blue roan cow walked across the said cattle guard and ate newly cut and poisonous Johnson grass from the effects of which said cow did then and there die. That as a result of the loss of said cow plaintiff sustained the following damages: For the reasonable value of said cow $180.00; for veterinary attention given said cow $20.00, aggregating a loss to plaintiff in the amount of $200.-00. This plaintiff is without fault in the premises. He did everything known to him to save his cow after he saw said cow eating said grass, which he believed would be fatal, even to the extent of calling a veterinary, at a reasonable cost of $20.00. *That but for the negligence, the lack of care and caution exercised by defendant, the proximate cause of said damage to plaintiff, the resulting injury would not have been sustained to plaintiff.*

4. Plaintiff alleges that the death of said cow was caused by the *negligence and want of care of the defendant* in one or all of the following particulars:

(a) *Defendant was negligent, and did not use ordinary care in constructing said stock guard, by laying said guard flat on the ground without first excavating underneath said guard.*

(b) Defendant's *neglect, failure and refusal to fence its right of way, until after the death of said cow."* (Emphasis added.)

In view of the considerations mentioned in the foregoing quotation from Kirkpatrick v. Illinois So. Ry. Co., supra, I think it appropriate to inquire what, under the holding of the Majority opinion, was the plaintiff to do in the situation with which he was faced when he discovered the defects in defendant's fence and called them to defendant's attention, as alleged in his petition? If he had taken it upon himself to, as it of course was not his duty to do, could he have gone upon defendant's right of way and made the repairs necessary to correct these fence defects, without being a trespasser? Was he bound to forego use of his pasture for grazing his cow because the defendant had failed in its fencing duties? Manifestly both of these questions must be answered in the negative. The State of Missouri has a statute which allows such a landowner to go upon the railroad's right of way, repair the fence and collect the cost of such repairs from the railroad company. This is in accord with the recognized common law duty of everyone to maintain his own property so that it will not constitute a hazard to or do injury to his neighbors; and Oklahoma should have such a law. In the absence of such a statute allowing others to make such repairs for them, I think railroads should be held liable for injuries that proximately result from such defects after they have had notice of them, as the defendant in this case did, according to plaintiff's allegations. In line with the reasoning of Young v. St. Louis-K. C. & N. Ry. Co., supra, I also think that had the present case been allowed to go to a jury, the jury might justifiably have determined that "in the exercise of reasonable foresight" the defendant should have foreseen that with such defects continuing to exist, one or more of plaintiff's cows would have gone onto its right of way and eaten the poisonous Johnson grass cuttings that it carelessly left lying there. If upon the trial of the case, plaintiff had been able to prove the allegations of negligence in

his petition, and that his cow died from the cause alleged, then he should have been entitled to recover. In this connection, see 44 Am.Jur., "Railroads", Sec. 590, note 13. The case of McCormick v. Atchison, T. & S. F. Ry. Co., 84 Okl. 54, 202 P. 302, might seem to some to be contrary to such a conclusion, but in that opinion it was specifically stated: "there is no contention made that it was any fault of the defendant that the plaintiff's cow entered upon the right of way." In arriving at the above conclusion as to defendant's liability upon proof of the allegations in plaintiff's petition, I have considered such allegations in the light of the principles governing such determinations applied by this Court in Oklahoma Nat. Gas Co. v. Courtney, 182 Okl. 582, 79 P.2d 235, 236, as follows:

"A party guilty of negligence or omission of duty is responsible for all the consequences which a prudent and experienced party, *fully acquainted with all the circumstances which in fact exist, whether they could have been ascertained by reasonable diligence or not, would have thought at the time of the negligent act as reasonably possible to follow, if they had been suggested to his mind.*

"Where there is an intervening, responsible agency, which directly produces the injury, * * *, the question as to whether the original negligence is to be regarded as the proximate cause of the injury, or only as a condition, or remote cause, is to be determined by ascertaining whether the agency which intervened was of such a character, and the circumstances under which it occurred were such, that *it might have been reasonably expected* that such agency or a similar one would intervene in such a way as to be likely to produce an injury similar to the one actually caused. If, under the circumstances, the intervention of such an agency in the manner stated *might reasonably have been expected in the usual course of events,* and according to common experience, then the chain of causation, extending

from the original wrongful act to the injury, is not broken by the independent, intervening agency, and the original wrongful act will be treated as the proximate cause." (Emphasis added.)

From an over-all standpoint, the most serious objection to the Majority opinion is the insidious and far-reaching effect of its interpretation of the statutes in question so as to include wording not found therein. In the final analysis, this amounts to legislation, which obviously, is beyond the constitutional prerogative and function of this court.

In accord with the above views and for the foregoing reasons I dissent.