STATE of Oklahoma ex rel. DEPARTMENT
OF HIGHWAYS of the State of Okla-
homa, Plaintiff in Error,

v.

RAY I. JONES SERVICE COMPANY, a do-
mestic corporation, and Imperial Casualty
and Indemnity Company, a foreign corpo-
ration, Defendants in Error.

No. 42719.

Supreme Court of Oklahoma.

July 14, 1970.

As Corrected Oct. 5, 1970.

Rehearing Denied Oct. 6, 1970.

John Paul Walters, Chief Counsel, Jim Barnett, A. A. Schreiber, by Floyd W. Taylor, Legal Intern, Oklahoma City, for plaintiff in error.

John D. Cheek, Cheek, Cheek & Cheek, Oklahoma City, for defendants in error.

WILLIAMS, Justice.

This is an action instituted by the State of Oklahoma, ex rel. Department of Highways, plaintiff in error herein, to recover for property loss and certain other specified expenses allegedly incurred when a truck owned by defendant Ray I. Jones Service Co. ("Jones") collided with a bridge over which U. S. Highway 81 crosses the Cimarron River a few miles south of the town of Dover in Kingfisher County.

On appeal, reference will be made to the parties as they appeared in the trial court.

In December, 1967, defendant Jones applied to this State's Department of Public Safety for a temporary permit to operate an oversized vehicle from Enid to a location east of Watonga. This oversized vehicle, on which was loaded a large steel frac tank, measured 15 feet 9 inches in height. As provided in 47 O.S.1969 Supp. § 14–103(c), the maximum height of any vehicle traveling any road or highway in this State is 13½ feet.

Pursuant to the provisions of 47 O.S. 1969 Supp. § 14–115, the Department of Public Safety issued a permit which permitted defendant to operate a vehicle 16 feet in height between the above specified points by using U. S. Highway 81, State Highway 33, and a county road. In this permit, which was signed by an employee

of defendant, the following language is contained:

"This load shall bypass all weight limit bridges if in excess of posted limits. *If this load exceeds the height of overhead structures all such structures shall be bypassed.*"

"* * * I further agree that *any damage to state property caused by this load must be reported within 24 hours, and I further agree that I, or the company I represent, assumed responsibility for said damage.*" (Emphasis added).

In transporting the oversized load between the points named in the permit, the top of the steel tank carried by defendant's truck collided with the above described bridge on U. S. Highway 81, damaging all overhead members of the first three spans and the first member of the fourth span. The center clearance of the bridge was 15 feet, or some 9 inches lower than the height of the oversized vehicle. At the time of the accident, it was daylight and the weather was clear and the road dry.

At trial, plaintiff's evidence established that the bridge's center clearance of 15 feet was marked, in accordance with regulations of the Department of Highways, by diamond shaped signs, 4 feet by 4 feet in size, placed some three to four hundred feet prior to the point where defendant's truck had entered the bridge. Plaintiff's evidence also established that the bridge became unusable due to the accident and had to be braced to keep from sinking into the stream, and that a request for bids for its repair was advertised. The low bid received, in the amount of $42,600, was accepted by plaintiff and this amount was paid upon completion of the repairs. Plaintiff also submitted evidence relating to additional expenses in the amount of $3,-520.50 for temporary repairs and a detour and for administrative costs incurred as a result of the accident.

Defendant's evidence was directed to the reasonableness of the amount of damages contended by plaintiff to have been sustained to the bridge and to its (Jones') understanding of the force and effect of the permit issued for the operation of the oversized vehicle.

In its instructions to the jury, the trial court included, among others, instructions concerning negligence, proximate cause, contributory negligence and the statutory provisions of 47 O.S.1961 §§ 14–114 and 14–115, the latter as amended. Section 14–114 provides, in subsection (a) thereof, that persons damaging an overpass or underpass with a vehicle shall be absolutely liable for such damages if the clearance of the structure is posted in the manner prescribed by Highway Department regulation. In the first paragraph of subsection (b) of § 14–114, persons owning or operating vehicles are stated to be responsible for damages to this State's highways and bridges if such damages result from negligence or improper operation of the vehicle. The last paragraph of subsection (b) provides as follows:

"The owner, driver, and any other person, firm or corporation responsible for any vehicle operating under an overweight or oversize permit shall be responsible for any damages to highway bridges or roads caused by the operation of such vehicle, whether caused by negligence or not, and no further permits shall be issued to such owner or operator until payment has been made for such damages. The amount of such damages may be recovered in an action for damages brought by the county or state agency having charge of said highway. The issuance of any special permit shall not be considered a warranty of any bridge or highway to support the permitted load."

Section 14–115, supra, provides, in applicable part:

"(a) The Commission [sic] of Public Safety, only acting through his delegated officers shall have authority to issue, *withhold, or revoke permits for temporary operation or for emergency operation of oversize vehicles* or combinations of vehicles * * *. Such special per-

mits may prescribe the hours of the day when valid, the highways to be used, and *such other conditions as the issuing officer may consider proper under the circumstances.*" (Emphasis added)

After deliberation, the jury returned a verdict for defendant. From a judgment entered on this verdict and an order overruling its motion for new trial, plaintiff appeals.

On appeal, both parties argue the extent of the liability imposed upon a holder of an oversize permit by the above quoted provisions of subsection (b), 47 O.S.1961 § 14–114 and the question of whether contributory negligence is a defense to such liability.

From the quoted language of the second paragraph of subsection (b), § 14–114, it is clear that the Legislature has imposed strict liability, i. e., liability without fault, on any person who damages public property while operating a vehicle under the authority of an oversize permit issued by the Commissioner of Public Safety.

However, in our review of the previous decisions of this Court, we have found no clear determination of the question of whether contributory negligence is available as a defense to an action based upon a statute imposing liability without fault.

In Midland Valley Railroad Co. v. Hardesty, 38 Okl. 559, 134 P. 400, this Court held that contributory negligence was not a defense where no exception or limitation was engrafted upon a statute making a railroad liable for damages to livestock straying upon an unfenced right-of-way required by statute to be fenced. In reviewing an action brought under a statute imposing the same liability upon railroads, we held, in Missouri, Kansas & Texas Ry., v. Bandy, 75 Okl. 57, 181 P. 313, that a railroad was liable for damages to livestock straying upon an unfenced right-of-way where it was not shown plaintiff was willfully negligent in permitting the animals to stray upon such right-of-way. In Carter Oil Co. v. Jackson, 194 Okl. 621, 153 P.2d 1013, where we found no evidence

of contributory negligence, this Court held it was unnecessary to determine whether contributory negligence was a defense to an action brought under a statute imposing liability upon one allowing oil and salt water to escape from oil wells and pollute a stream located on plaintiff's land.

In our opinion, the language of Missouri-Kansas & Texas Ry. v. Bandy, supra, suggests the correct rule to be applied herein. This rule would allow contributory negligence properly to be a defense in an action based upon a statute imposing liability without fault where and only where the one seeking to impose liability was himself guilty of such intentional or reckless conduct as to create the supposition of his reasonable anticipation of receiving the damages sustained. See Foster & Keeton, Liability Without Fault in Oklahoma, 3 Okl.L.Rev. 172, 187–194; Restatement, Torts § 524.

In our review of the record herein, we have found no evidence to indicate plaintiff was guilty of intentional or reckless conduct. The center clearance afforded by the bridge was clearly marked prior to entry into the bridge to apprise defendant's driver of the hazard. Defendant contends that plaintiff was negligent in directing the truck, in the provisions of the permit, to travel over routes on which there were bridges insufficient in clearance for the size of the load. However, as stated above, the permit also includes language requiring the holder thereof to bypass all overhead structures if the height of the oversize load exceeded the clearance afforded by such structures.

It is true, as contended by defendant herein, that plaintiff brought this action in the trial court by a petition alleging negligence by defendant and that plaintiff did not object to any of the instructions given by the trial court. However, in Baumgart v. Bryant, 184 Okl. 531, 88 P.2d 635, we held, in the third paragraph of the syllabus thereof:

"Where an instruction is correct, but a party wants the law more fully stated

or wants additional instruction on his theory, a reversal will not be ordered unless he requests such instruction; but where the court erroneously instructs the jury as to the law applicable *to the material issues as made by the pleadings and evidence* or fails entirely to instruct upon such issues, such error is not waived by failure to request a proper instruction as to the law." (Emphasis added).

See also Beams v. Young, 92 Okl. 294, 222 P. 952; Mutual Refining Co. v. Union Refining Co., 124 Okl. 286, 255 P. 1015.

As noted above, plaintiff's petition alleged negligence, but the evidence established that defendant had applied for and had been issued a permit to operate a vehicle carrying an oversized load and that the bridge had been damaged by the oversized vehicle while operating under this permit. The fundamental issue herein is defendant's liability for damages resulting from its operation of the vehicle under the terms of the permit. This liability is not grounded on negligence, rather, this liability is grounded on the provisions of the second paragraph of § 14–114(b), supra.

■ From the record herein, it is our view the trial court properly should have instructed the jury only as to these statutory provisions imposing liability and the amount of damages resulting from the accident. We conclude the trial court erred in instructing the jury on negligence and contributory negligence.

As a jury verdict for defendant was returned in the trial court the parties on appeal have not briefed the question of the measure of damages. In view of our decision herein to reverse the trial court's judgment and remand the cause for new trial, some comments must be made concerning this question.

■ In an action to recover damages for injury to a bridge, the measure of damages is the actual and reasonable cost of repair to the bridge to restore it to its condition prior to the injury. 40 Am.Jur.2d Highways, Streets, and Bridges, § 607.

At trial plaintiff took the position that the actual and reasonable cost of repairing the bridge was the low bid of two it received after advertising for such bids pursuant to 69 O.S.1961 § 48. This cited statutory section requires, inter alia, that all contracts for construction work upon the State Highway System be let to the lowest *responsible* bidder, but further provides that if in the opinion of the State Highway Commission the lowest *responsible* bid is excessive, the Commission may either perform the work itself or re-advertise for additional bids.

In the trial court, defendant attempted to establish that the bid accepted by plaintiff was excessive as the cost of one line item was grossly inflated. Part of the evidence submitted to prove the item's inflated cost was its cost as stated on the other bid received by plaintiff in response to its advertisement for bids to repair the bridge. However, this second bid was not accepted as the costs stated therein for other items inflated its total bid price to an amount exceeding that of the bid accepted.

■ In our opinion, defendant should be allowed to submit evidence relating to the actual and reasonable costs of repairing the bridge by a responsible contractor. This evidence should not be directed only to the costs of one, or perhaps several, line items as this method, which readily can be seen from the record herein, is not helpful. Rather, the evidence should be directed to the *total* cost of repairing the bridge by one deemed to be a qualified and responsible bidder as required by the applicable statute.

In addition to the damages resulting from the costs of repairing the bridge, plaintiff also sought herein to recover consequential damages arising from the construction of temporary detours, etc. In State ex rel. Dept. of Highways v. Rumsey, 205 Okl. 307, 237 P.2d 448, although noting that the issue of damages was unimportant as the jury verdict for defendant was being affirmed on appeal, the Court discussed various cited authorities

from Kansas, Arkansas and Texas which held that where a statute provided for the recovery of damages to a bridge itself, consequential damages could not be recovered.

In United States v. State Road Dept. of Florida, 189 F.2d 591 (5th Cir.), the Court, although noting the authorities cited in State ex rel. Dept. of Highways v. Rumsey, supra, interpreted a Florida statute limiting recovery to "the actual damage to the highway" as being a term broad enough to include consequential damages consisting of costs for temporary bridges. In its opinion, the Court stated, 189 F.2d at pp. 595–596:

"  *   *   *  The trial judge in sustaining the motion to strike this defense was of the opinion that a failure to consider the cost of constructing the temporary bridges as a necessary part of the overall construction costs of the repairs of the permanent bridge would 'be to blindly ignore the importance of present day use of arterial highways.' We are impelled to the same view. * * * So closely related are the repairs to the permanent bridge and the necessity for maintaining the traffic artery which it affords that we think the expense here in question constitutes 'actual damage to the highway' within the fair intent and meaning of the Florida statute. Actual damages are compensatory damages. Expenses which naturally and reasonably follow from an injury to property are proper items of recovery. In recognition of this, Florida Courts permit recovery of the use value of automobiles while waiting repair, and the right to recover the rental expense for an automobile necessary to replace one negligently damaged is well recognized."

▉ We find the above quoted reasoning persuasive in the instant case. In our opinion, the language in the second paragraph of § 14–114(b), supra, providing that one " * * * shall be responsible for *any damages* to highway bridges or roads caused by the operation" under a permit of an oversize vehicle is broad enough to in-

clude consequential damages such as prayed for by plaintiff herein. (Emphasis added).

The judgment of the trial court is reversed and the cause remanded for new trial.

BERRY, V. C. J., and HODGES and LAVENDER, JJ., concur.

BLACKBIRD, J., concurs in result.

JACKSON, J., concurs specially.

IRWIN, C. J., and DAVISON and McINERNEY, JJ., dissent.

JACKSON, Justice (concurring specially).

47 O.S.1961, Sec. 14–114(b), provides in part:

"The owner, driver, and any other person  *   *   *  responsible for any vehicle operating under an  *   *   * oversize permit shall be responsible for any damages to highway bridges  *   *   * caused by the operation of such vehicle, whether caused by negligence or not *   *   *."

This section of the statute imposes strict liability upon truck drivers and owners who are operating under oversize permits.

47 O.S.1961, Sec. 14–115(b), as amended, requires an applicant for an oversize permit to describe the vehicle and load to be moved "and the particular highways for which permit to operate is requested." Subsection (a) of Section 14–115, as amended, provides that "special permits may prescribe the hours of the day when valid, the highways to be used and such other conditions as the issuing officer may consider proper under the circumstances."

The permit issued in this instance authorized the load, 16 feet in height, to be transported over Highway 81, Highway 33, and then a country road. The permit further provided:

"If this load exceeds the height of overhead structures all such structures shall be bypassed."

The permit did not explain how the structure would be bypassed, or what alternative roads might be used in transporting the load to its designation.

Section 14–115(b), as amended, authorizes the Commissioner of Public Safety to prescribe the highways to be used. It does not authorize the driver of the truck to prescribe the highways to be used, although the permit does. The Commissioner of Public Safety has no legislative authority to delegate his powers of selecting the highways to be used to truck drivers. That authority and responsibility was placed upon the Commissioner of Public Safety. I am of the view the Commissioner did not discharge that responsibility in this instance.

Plaintiff makes the argument that it would be impossible for the Commissioner to be aware of the height and weight carrying capacity of all bridges in the State. I think the Legislature shared that view as to the weight carrying capacity of bridges, but not as to their height and width. Height and width are not mentioned in the last sentence of Section 14–114(b) wherein it is provided that "The issuance of any special permit shall not be considered a warranty of any bridge or highway to *support* the permitted load." (emphasis supplied).

Although the Commissioner, in my opinion, was derelict in prescribing the use of Highway 81 in this instance, I do not believe that the Legislature intended that contributory negligence would be a defense. The Legislature intended that the driver and owner of the truck would be liable for the damages to the bridge *caused* by the operation of the vehicle notwithstanding the issuance of the permit. If defendants' conduct in this case was not the proximate cause of plaintiff's damages the plaintiff should not prevail.

I do not believe Missouri, Kansas & Texas Ry. v. Bandy, 75 Okl. 57, 181 P. 313, announces the correct rule to be applied in this case. In connection with railroad right-of-way cases it has been said that the railroad company is required by statute to fence its right-of-way; that a farmer is entitled to pasture his land whether the right-of-way is fenced or not; and that the farmer may recover damages for animals injured on the railroad track unless he is willfully negligent. In the instant case plaintiff may not prevail if plaintiff *caused* the accident whether its conduct was willful or not.

This case was pled and tried by the plaintiff and defended by defendants as a negligence case. Plaintiff did not object to any of the instructions given; did not request any instructions; and did not demur to defendant's evidence, nor move for a directed verdict. Following the verdict no motion was made for judgment notwithstanding the verdict (assuming that such a motion would have been appropriate). In motion for new trial plaintiff asserted that (1) the verdict is contrary to the law and (2) the verdict disregards the Court's instructions. In petition in error plaintiff asserts that (1) the verdict was contrary to and in disregard of the Court's instructions; (2) the verdict was contrary to law; and (3) that the verdict is contrary to the statutory law of the State of Oklahoma.

I believe we are justified under former decisions in reviewing the record to determine (1) whether the verdict is contrary to the law and (2) whether the jury disregarded the Court's instructions.

In this case the trial court instructed on negligence and contributory negligence on theories alleged in the pleadings and then quoted the substance of the law as set forth in 47 O.S.1961, Secs. 14–114, and 14–115 as amended. We have held that instructions must be consistent and harmonious. Schulte v. Garrett (1924), 99 Okl. 52, 225 P. 904. The instructions in this case were not consistent. We have held where the trial court incorrectly instructs the jury in such a way as to constitute prejudicial error such error is not waived by a failure to request a proper instruction. Oklahoma Producing and Refining Corp. of America v. Freeman (1923)

88 Okl. 166, 212 P.2d 742. In Deal v. State (1928), 129 Okl. 128, 263 P. 1094, and in McIntire v. Burns (1935), 172 Okl. 152, 42 P.2d 143, we held in substance that it is the duty of the trial court upon its own motion to properly instruct the jury upon the decisive issues formed by the pleadings and the evidence. In International Harvester Co. v. Snider, 184 Okl. 537, 88 P.2d 606, we said:

"It is the duty of the trial court upon its own motion to properly instruct upon the decisive features of the case and a failure to do so constitutes reversible error."

The decisive issues in this case were not formed by the pleadings but by applying the applicable statutory law to the evidence in the case. The case should be returned to the trial court for new trial, and preferably upon amended pleadings.